**UNITED STATES of America,
Appellee,**

v.

**Steven Antone CAMARA, Defendant,
Appellant.**

**No. 71–1222.**

United States Court of Appeals,
First Circuit.

Heard Nov. 3, 1971.

Decided Dec. 2, 1971.

Edward F. Haber, Boston, Mass., by appointment of the Court, for appellant.

William A. Brown, Asst. U. S. Atty., with whom Herbert F. Travers, Jr., U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, and BREITENSTEIN, Senior Circuit Judge,* and COFFIN, Circuit Judge.

COFFIN, Circuit Judge.

Appellant was convicted in a jury-waived trial of refusing to comply with his draft board's order to report for induction, in violation of 50 U.S.C. App. § 462. His major contention is that his refusal to be inducted was not wilful, since he alleges that he reasonably believed, under the law of this circuit prior to Ehlert v. United States, 402 U. S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), that his local board acted illegally in refusing to reopen his classifica-

tion to consider his post-induction order claim for conscientious objector status.

On June 25, 1970, appellant was ordered to report for induction on July 7; on July 1, he requested a conscientious objector form (SSS Form 150) and, his induction order being postponed, completed and returned it on July 22. He was given a hearing on July 29. The local board, finding that "there has been no change in [appellant's] status as a result of circumstances over which he had no control", declined to reopen his 1–A classification and ordered him to report for induction on August 6. Appellant duly reported but refused induction.

■ Appellant argues that the board's refusal to reopen his classification was expressed in an ambiguous statement, which could be construed either as a finding that his status had not changed or that, if it had changed, the circumstances had not been beyond his control. In the latter circumstance, appellant contends, the local board, in deeming itself without power to reopen, would have acted contrary to the law of our circuit at the time. We had earlier observed in United States v. Stoppelman, 1 Cir., 406 F.2d 127, 131 n. 7, cert. denied, 395 U.S. 981, 89 S.Ct. 2141, 23 L. Ed.2d 769 (1969), that "we envisage the possibility of [a registrant's] carrying this burden [of proving sincerity, timing, and lack of control over a belated change of belief] and are persuaded by the reasoning of the Second Circuit in United States v. Gearey, 368 F.2d 144 (1966). * * *"

.The then existing conflict among the circuits on the issue whether a post-induction claim of C.O. status could be "circumstances over which the registrant had no control" was, of course, settled by Ehlert v. United States, supra, which held that such late-blooming claims could not be considered by draft boards. Appellant contends, however, that the decision in Ehlert, handed down on April 21, 1971, cannot retroactively

render illegal his prior refusal to submit to induction. He says, more specifically, that he did not "knowingly" fail to report for induction, in violation of 50 U.S.C. App. § 462(a), since, to quote his brief, he "was reasonable in believing that the board's refusal to reopen his classification, and hence its subsequent cancellation of his induction order postponement and the renewal of the July 7 order to report for induction was contrary to law and hence the law did not require that the order be obeyed."

Appellant relies on United States v. Murdock, 290 U.S. 389, 54 S.Ct. 223, 78 L.Ed. 381 (1933), to which we devoted considerable attention in United States v. Boardman, 419 F.2d 110, 114–115 (1969), cert. denied, 397 U.S. 991, 90 S. Ct. 1124, 25 L.Ed.2d 398 (1970). Without conceding that a refusal to submit to induction can be equated with a misunderstanding of complex revenue regulations, we think that appellant's *Murdock* argument misfires. The issue in *Murdock* was whether a charge should have been given to the jury that it could consider whether the respondent-taxpayer in that case was so unreasonable in invoking his Fifth Amendment privilege against incriminating himself in a possible state prosecution as the basis for his refusal to supply tax information as to exhibit bad faith and establish wilful wrong-doing. The Court held that, since Murdock had testified to a "bona fide misunderstanding" regarding his legal obligations, he had a right to have the question of absence of evil motive submitted to the jury. 290 U.S. at 396, 54 S.Ct. 223. Appellant here, however, offered no testimony in the district court showing that as of the time he declined to submit to induction, he believed that the local board's refusal to reopen his classification was illegal. The only defense evidence was documentary and this affirmatively indicated that no such reliance on procedural regularity played a part in his refusal to submit to induction.[1]

More to the point, arguably, is James v. United States, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). In that case the Court took the step of overruling Commissioner of Internal Revenue v. Wilcox, 327 U.S. 404, 66 S.Ct. 546, 90 L.Ed. 752 (1946), which had held that embezzled money was not taxable income. Though seriously eroded by Rutkin v. United States, 343 U.S. 130, 72 S.Ct. 571, 96 L.Ed. 833 (1952), which held that extorted money was taxable income, *Wilcox* was specifically left standing as law on its facts. Recognizing that taxpayers might have relied on *Wilcox* and that the government could not have proven wilfulness in a criminal prosecution for failing to report embezzled funds in gross income "so long as the statute contained the gloss placed upon it by *Wilcox* at the time the alleged crime was committed", the Court reversed the respondent's conviction and ordered the indictment dismissed.

The majority of the Court apparently felt that a retrial as to wilfulness would be a charade since the taxpayer's obvious defense would continue to be, as it had been, United States v. James, 273 F.2d 5 (7th Cir. 1959), the entirely reasonable reliance on *Wilcox* as having stated the final national law on the taxability of embezzled funds. In the case before us, appellant is seizing upon astute counsel's afterthought to elevate our dictum in United States v. Stoppelman, *supra*,[2] as to which there is no showing of knowledge or reliance at the induction date, into a vested interest—at

1. His written statement of reasons at the induction station merely reaffirmed his religious beliefs, his willingness to help people in a civilian capacity, and his unwillingness to render service which directly or indirectly might be involved with the armed forces.

2. Two days before appellant's induction date, a Massachuetts district court decision, Lane v. Local Board No. 17, 315 F.Supp. 1355 (D.Mass.1970), applying the late crystallization rule, but without citing *Stoppelman*, was issued. Appellant at argument properly emphasized that he was putting major reliance on *Stoppelman*.

a time when not only were the circuits in widespread disagreement, but the Supreme Court itself had granted certiorari in Ehlert v. United States, 422 F.2d 332 (9th Cir. 1970), cert. granted, 397 U.S. 1074, 90 S.Ct. 1525, 25 L.Ed.2d 808 (May 4, 1970). Even had there been evidence that appellant had consulted a lawyer as to the propriety of the local board's refusal to reopen his classification, any advice that the national law on this point was well settled would have been irresponsible. Nor does it appear that he received any such advice.

■ Appellant also asserts that a local board must advise every registrant who submits a late crystallizing C.O. claim that he is entitled to a hearing on that claim from the Army and that, pending action following such hearing, he will not be required to engage in any combat training. In default of such prior notification, appellant argues, an order to report for induction would be invalid. No authority is cited for this proposition, except the inapposite requirement that a local board must inform a registrant of his right of appeal. Whatever may be the responsibility of the Army to a registrant after induction to inform him of his then available rights, that responsibility does not rise to the level of legal duty at the draft board stage of processing.[3]

■ Another defense advanced by appellant is that the local board violated proper order of call. The district court, after thorough scrutiny of all names on the call list below that of appellant, found that five of the eleven registrants who were called after appellant should have been called before appellant. While the government challenges the court's findings as to the five, we find no occasion to review those findings since there was no prejudice to appellant; he was high enough on the list so that he would still have been called even if there had been no errors. Appellant maintains that it is enough for him to show one error, recalling our attention to our own statement in Yates v. United States, 404 F.2d 462, 466 (1st Cir.1969), that " * * * where a defendant can produce evidence of a person who should have been called before him but was not * * * the government cannot disprove a leak in a bucket simply by showing most of it was tight."

■ This, in retrospect, was too encyclopedic a statement. Our focus, as the district court noted, was not on this problem. It was rather on the "rare" case, i. e., a case where proof of one error, where it counted, would suffice to exclude a registrant, and where proof of perfection as to every other part of the order of call in a draft would be irrelevant. We should have added that by the same token a defendant cannot prove a bucket empty by proving a spill; what remains and what it covers are the essentials. Such, by implication, are the decisions in United States v. Baker, 416 F.2d 202, 205 (9th Cir. 1969), and United States v. Lloyd, 431 F.2d 160, 169 (9th Cir. 1970). We have found no cases to the contrary.

Appellant urges that we pronounce a broad prophylactic rule. Not only would such a rule place a huge premium on an isolated error, perhaps a very disputable one as in this case, to the unrestrained havoc of local board functioning; it is not necessary to assure protection to a registrant, particularly where, as here, full information, cross-examination, and judicial attention as to each subsequent name on the call list were provided.

■ More ambitious assaults against the judgment of conviction include a challenge to the grand jury array, the il-

---

3. The Court's primary concern in Ehlert v. United States, *supra*, was to ensure that "late crystallizers" always had a forum in which to present their claims for conscientious objector status while allowing the selective service system the operating benefits provided by reasonable timeliness rules. Although there is no hint in the Supreme Court's opinion or in the opinion of the Court of Appeals that Ehlert knew at the time he refused induction that procedures were available in the Army by which he could assert his conscientious objector claim, the Supreme Court affirmed his conviction.

legality of the Vietnam War, and the exclusion of women from the draft. The grand jury selection process, now based on voting lists, is challenged for its exclusion of paupers, who are by state law ineligible to vote, for its countenancing of excuses given by professional people, and for the disproportionately small numbers of young people who serve. The first ground was not presented to the court below; the second contention is made without benefit of data as to excuses granted; and the underrepresentation of persons under twenty-five, in view of the obligations of education and transient presence or absence of the younger age group, does not present a case for discrimination. United States v. Gargan, 314 F.Supp. 414 (W.D. Wisc. 1970). *See also* United States v. Butera, 420 F.2d 564 (1st Cir. 1970).

■■ As to the attempted challenge of the illegality of the Vietnam War, appellant does not surmount the hurdle of standing. United States v. Mitchell, 369 F.2d 323 (2d Cir. 1966), cert denied, 386 U.S. 972, 87 S.Ct. 1162, 18 L.Ed.2d 132 (1967). *Cf.* Massachusetts v. Laird, 451 F.2d 26 (1st Cir. 1971). And we are not yet prepared to say that the Congress lacked a sufficiently rational basis in confining the draft to males.

Affirmed.