UNITED STATES of America,
Appellee,

v.

Wayne Douglas KING, Defendant-Appellant.

No. 71–1224.

United States Court of Appeals,
First Circuit.

Heard Jan. 4, 1972.

Decided Feb. 2, 1972.

Gerald J. Billow, Cambridge, Mass., by appointment of the Court, with whom Remcho, Billow & Haroz, Michael J. Haroz, Lawrence E. Katz, and Bernard Nevas, Cambridge, Mass., were on brief, for appellant.

Robert B. Collings, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before ALDRICH, Chief Judge, and McENTEE and COFFIN, Circuit Judges.

COFFIN, Circuit Judge.

Appellant Wayne King was convicted in a jury trial of refusing to report for and submit to induction in violation of 50 U.S.C. App. § 462(a). On appeal, he asserts that he was entitled to acquittal because the army failed to follow its regulations applying to the conduct of his pre-induction physical examination or because the clerk of his local board failed to bring to the attention of the members of the board certain facts which he alleges might have warranted a physical deferment. Alternatively, he contends that a new trial must be granted on any of the three grounds that evidence as to his conscientious objection to war was improperly excluded, that the court erred in instructing the jury that receipt of a notice of classification must conclusively be presumed from its mailing, and that certain testimonial evidence as to order of call was improperly admitted.

## PHYSICAL EXAMINATION

King held a II–S deferment as a student at Westfield State College when, on April 15, 1968, his local board received notification from Westfield that he had withdrawn. Having been reclassified I–A on April 23, he was ordered to report for a physical examination on June 17. At the examining station, King completed the customary Standard Form 89, Report of Medical History, checking, among others, the items "dizziness or fainting spells"; "depression or excessive worry"; "frequent trouble sleeping"; "stomach, liver or intestinal trouble"; "recent gain or loss of weight"; and "any drug or narcotic habit". In the space which called for a "statement of examinee's present health in own words", King wrote merely "good". As required by Form 89, the examining physician wrote a brief "summary and elaboration" of each checked item after an interview with King. His notes included, with reference to the "drug or narcotic habit", "psychedelic drugs 2½ years".

On Standard Form 88, Report of Medical Examination, the examining physician checked "abnormal" for the categories "upper extremities", "spine", and "psychiatric", explaining respectively, "claim mild pain in shoulder & neck—no records", "claim mild pain in low back—no records", and "takes psychedelic drugs 2½ years". He concluded that King was qualified for induction, and stamped on the form a paragraph indicating that King "claims ailments not verified by the medical officer and has been advised to present documentary evidence, 'at his own expense' to substantiate claims to his Selective Service local board prior to his induction."

██ Based solely on these forms, King asserts that his physical examination was improper in that he was not accorded an examination by a psychiatric specialist. The matter is governed by Army Regulation 601–270, ¶ 4–20h(1) (b). "A specific psychiatric evaluation will be made by the Chief, Medical Examining Section, whenever the examining physician has reason to question the examinee's emotional, social, or intellectual adequacy for military service." As is apparent from the language of the regulation, discretion is reposed in the examining physician. To be sure, as King points out, a registrant may be rejected for drug addiction, AR 40–501, ¶ 2–34a(4), but the mere fact, even if true, that a registrant has taken psychedelic drugs for two and one-half years does not entitle him to a specialist examination. It was apparently the opinion of the examining physician that King showed no appreciable ill effects from any taking of drugs and met the current psychiatric standards for induction.[1] Nor do the present facts show an abuse of discretion.

---

1. This is indicated by the notation "1" under the letter "S" of Item 76.A (Form 88). "[A]ny examinee who meets the current psychiatric standards for military service will be profiled 1 (no profile limitation), under the 'S' factor . . . ."

■ As further criticism of the conduct of his physical examination, King cites the failure of the examining physisian to attach to Form 88, as required by AR 601–270, ¶ 4–20h(6),[2] letters allegedly brought to the examination. The sole evidence at trial concerning these letters was the following colloquy on direct examination:

"Q. What were these letters?

A. They just stated about my stomach condition, I had been treated for injuries I had received in an automobile accident.

Q. What did you do with these letters?

A. I took then to the physical with me. I handed them to a doctor. He looked at them, handed them back to me."

Notably, neither the letters nor copies were introduced into evidence, nor was there testimony as to their specific contents. Since the testimony does not indicate that the stomach condition was a disqualifying one [3] or even that it had persisted until the time of the physical examination, the district court properly refused to instruct that King must be acquitted if the jury found that he presented letters to the examining physician.[4]

## REOPENING

■ In criticizing the admitted failure of the local board clerk to bring to the attention of the members of the board Forms 88 and 89 when they were returned by the examining station to the local board, King relies on the decision of this court in United States v. Ford, 431 F.2d 1310 (1st Cir. 1970). In Ford, we reasoned from Mulloy v. United States, 398 U.S. 410, 90 S.Ct. 1766, 26 L.Ed.2d 362 (1970), which requires that the local board reopen a registrant's classification when he makes a prima facie claim for a new classification, that allegations of new facts must be shown to the members of the board by the clerk in order that the board may determine whether the registrant has made a prima facie claim. King would have us interpret Ford as requiring that the statements on his Forms 88 and 89, primarily "takes psychedelic drugs during 2½ years", should have been considered by the local board as a possible prima facie claim of a "personality disorder" which would entitle him to a I–Y or IV–F classification.[5]

■ We are not persuaded. The Ford decision did not signal an abandonment of common sense and relevancy. Forms 88 and 89, as their titles, Report of Medical Examination and Report of Medical History, suggest, are not intended to be vehicles for the presentation of claims to local boards. Nor, more importantly, are they detailed enough to be of use to the board other than to indicate summary conclusions about assorted symptoms: the brevity of the entries forecloses the meaningful evaluation which was at the

---

AR 601–270, ¶ 4–20h(1) (b). United States v. Powell, 449 F.2d 706, 708 (3d Cir. 1971).

2. AR 601–270, ¶ 4–20(6) states in part that "When documents prepared by physicians are submitted by the examinee in evidence of an existing physical condition which indicates that the individual has received treatment for a reported condition, such documents will be attached to each Standard Form 88."

3. For fitness standards relating to the abdomen and gastrointestinal system, see AR 40–501, ¶ 2–3.

4. Cf. United States v. Lloyd, 431 F.2d 160 (9th Cir. 1970). In Lloyd, the court affirmed the trial court's rejection of an offer of proof that a similar letter from a named doctor was not attached to defendant's file by the examining station, on the grounds that no showing was made as to its contents or as to the unavailability of a copy. 431 F.2d at 164 n. 10, 166.

5. More specifically, King emphasizes that one cause for rejection is a "character or behavior disorder" as evidenced by
"(1) Frequent encounters with law enforcement agencies, or antisocial attitudes or behavior which, while not a cause for administrative rejection, are tangible evidence of an impaired characterological capacity to adapt to the military service.
(4) Drug addiction."
AR 40–501, ¶ 2–34a.

base of *Ford*. The present case is illustrative—"takes psychedelic drugs 2½ years" tells the board little. Appellant did not present his psychiatric claim to the local board, as he was advised to do by the stamp on his Form 88. To impose upon the board the duty of inspecting every Form 88 and 89 returned by the examining station would be to compel it to misallocate its time.

## REFUSAL OF FORMS

■ Appellant also contends that he is entitled to a new trial on the ground that the trial judge improperly excluded testimony which would have tended to support his theory that on four occasions he had requested and been refused forms on which to indicate conscientious objection. The court instructed the jury that "If you find he did ask for them prior to his receipt of the order to report for induction, then I tell you the order to report for induction was invalid." King was permitted to testify that he refused induction because he was a conscientious objector and to testify in some detail about the four alleged requests for forms. The court did not permit him to testify in more detail about his beliefs nor his pastor to testify corroborating his conscientious objection, and excluded the deposition testimony of his mother. These items of testimony would, appellant maintains, have established more clearly for the jury that King was a conscientious objector. Because an objector is more likely than a non-objector to ask for forms, he continues, the jury could have inferred that King did so. While the predicate is patently correct, the conclusion follows no more than to say that because a sober driver is less likely to drive through a red light than an inebriated one, proof of a driver's reputation for sobriety among his neighbors must be admitted in a negligence action against him. Recognizing that the trial court did permit the testimony sketched

above, which was relevant to no other issue, and instructed the jury as to appellant's requests, we hold that it did not abuse its discretion in excluding further offers of proof which might needlessly have confused the jury.

## MAILING OF NOTICE

The court instructed, essentially, that the government must prove beyond a reasonable doubt that an SSS Form 110, Notice of Classification, was mailed to King on the occasion of his being placed in Class I–A, but that it need not prove receipt. King attacks this instruction as a denial of due process, but we find this attack inconceivable on the present facts.

■■ Due process may be satisfied by actual knowledge from sources other than a Form 110, that one has been reclassified. In the case before us, King filed an SSS Form 104, Request for Undergraduate Student Deferment, on October 4, 1967, and was classified II–S on October 31. On April 15, 1968, his local board received notice from his college that he had withdrawn due to academic failure. He was ordered for a physical examination on May 21, examined on June 17, and notified of his acceptability on June 24. Not until January 16, 1969, was he ordered to report for induction on February 4. In light of this history, his testimony at trial that until January, 1971, he believed that he remained II–S is plainly incredible.[6] A registrant who has applied for a deferment to pursue a "full-time course of instruction" will not be heard to claim that he had no notice that he was no longer classified II–S while driving trucks three years later or even nine months later. Having been found physically acceptable and not having requested any other classification, he may be charged with knowledge of the I–A classification. At an absolute minimum, he was obliged to inquire as to his status. What we said in a different context is

6. Appellant testified that he discovered that he was I–A only when, having lost his wallet, he obtained a duplicate SSS

Form 110 from his local board in January, 1971.

relevant here as well: "We cannot . . . consider it unreasonable to require a registrant to exercise at least a minimum amount of diligence in his own interest." United States v. Walker, 424 F.2d 1069, 1070 (1st Cir. 1970).

## ORDER OF CALL

■ Appellant's contention as to the order of call, finally, is a complex one, in which evidentiary matters are entangled with substantive ones. The difficulty here as elsewhere is that an order of call sufficiently off the mark will mean acquittal and is thus a matter of intense interest to the defendant, while, from the government's perspective, order of call is an entirely collateral issue. In a defendant's ideal world, proper order of call would be treated as an "element of the offense" and the government would bear from the outset a burden of demonstrating with documentary evidence from individual files that a defendant was in no way prejudiced by his local board's action. This would involve a justification in the first instance by the government of all classification decisions or series of such decisions which have removed other registrants from the list of those being called. In a prosecutorial utopia, order of call would be styled an "affirmative defense", and defendant would bear the burden of demonstrating from public records that he was prejudiced, whereupon the government might respond with the conclusory testimony of a clerk that defendant was called in the proper order.

■ In structuring the substantive and procedural sub-issues relating to order of call, courts have sought to allocate burdens and regulate discovery in ways which permit the occasional de-fendant who has a substantial order of call claim to raise it without unduly burdening the government or the courts in the majority of cases, where the issue is irrelevant. Our decisions have settled two major points: that improper order of call is not a defense unless the registrant would not otherwise have been called when he was, United States v. Camara, 451 F.2d 1122 (1st Cir., filed Dec. 2, 1971), and that the burden of going forward shifts from the defendant, where it rests initially, to the government, when a defendant raises the issue. Yates v. United States, 404 F.2d 462 (1st Cir. 1968), rehg. denied, 407 F.2d 50 (1969). The present case requires us to consider in greater detail the responsibility of a defendant to raise the issue and the proper procedure to be utilized by the government in carrying its resulting burden.

At the time King was ordered to report for induction, the regulation provided essentially that the oldest registrants under age 26 in Class I–A must be called first.[7] Eleven younger men having been ordered to report for induction on the same day as he was, King would show prejudice only if twelve or more registrants who were not called should have been called before he was. United States v. Camara, supra, at 1125.

The order of call issue was inartfully raised in the court below. Prior to the trial, appellant moved for and was granted discovery of "Copies of the Classification Record of local board No. 3 (SSS Form 102) for the years of birth 1942–1949 inclusive."[8] Discovery was denied but appellant was given free access to the Form 102 books, which contain a skeletal record of the contact of all registrants with a local board, spaces being

7. "Such registrants . . . shall be selected and ordered to report for induction in the following order: (3) Non-volunteers who have attained the age of 19 years and have no [sic] attained the age of 26 years . . . in the order of their dates of birth with the oldest being selected first." 32 C.F.R. § 1631.7(a) (1967).

8. The Motion for Discovery states that these documents were sought "to determine if the defendant was called for induction and physical examination in the proper order and whether or not others should have been called instead of him. 32 C.F.R. 1628.11 and 1631.7, Yates v. United States, 404 F.2d 462, reh. [denied] 407 F.2d 50 (1st Cir. 1968 [1969])."

provided for, among other things, name, date of birth, class and date of mailing for each classification or reclassification, appeal to appeal board, and date and results of armed forces physical examination. From the Form 102 books, counsel for King evidently identified two hundred registrants who should perhaps have been called before King. King's Reply Brief on appeal indicates that he then sought to inspect the files of these registrants with the U. S. Attorney but that the U. S. Attorney declined to do so, offering instead to inspect the files himself and then to present documents deemed relevant to King. King did not seek a court order to inspect the documents and refused to indicate in advance of trial the precise number and identity of registrants who he would claim at trial should have been called before him.

At trial, photostats of the relevant pages of the Form 102 books were introduced into evidence when appellant again raised the issue on the cross-examination of the Executive Secretary of the local board. King established on cross-examination by reference to Form 102 that sixty-one registrants older than himself who were in Class I–A on the date he was ordered to report for induction were not called. On redirect, the Executive Secretary, relying in part on the Form 102 books and in part on her notes from the files of those registrants explained why fifty-six of those sixty-one were not called.

■ Appellant argues that by discovery motion, by informal conversation, and by cross-examination of the Executive Secretary, he adequately raised the order of call issue, *Yates, supra*, and that thereupon, the burden of going forward having shifted to the government, the court should not have permitted the Executive Secretary to testify from her notes, but should instead have compelled the government to produce the "best evidence" of the reasons why other registrants were not called, that is, documents from the selective service files of those registrants. The government admits that the issue was raised as to the

sixty-one registrants mentioned above but that the testimony of the Executive Secretary sufficed as a substitute for the "best evidence". Each party argues, as no doubt it should, that its position was adopted in *Yates, supra*. Yates not having raised the order of call issue, the question as to the proper mode of proof when the issue is raised was not before us there, and our opinion may consequently have been ambiguous in this regard. We address the matter now.

We find United States v. Baker, 416 F.2d 202 (9th Cir. 1969), directly on point and persuasive. In that case, Baker demonstrated that six registrants older than himself and classified I–A according to the Form 102 book had not been called. By way of justification, the government then sought to inquire of its witness the reasons that the six registrants had been passed by. In discussing Baker's objection to that question, the court stated that

> "the question called for testimony of the witness concerning the contents of writings which were part of the older registrants' selective service files. The best evidence of such writings was of course the writings themselves . . . ." 416 F.2d at 205.

*Cf.* United States v. Dobie, 444 F.2d 417 (4th Cir. 1971); United States v. Weintraub, 429 F.2d 658 (2d Cir. 1970), cert. denied, 400 U.S. 1014, 91 S.Ct. 572, 27 L.Ed.2d 627 (1971).

While we adopt *Baker*, we apply it to the present case only with some hesitation. Even though, the defendant having raised an order of call issue, the burden of proof shifts to the government, the burden is peculiar in that its scope is determined in part by the defendant. In the present case, the government did not know until the cross-examination of the Executive Secretary which registrants King would claim should have been called. At trial, appellant challenged only sixty-one of the approximately two hundred which he had suggested he might challenge. Notwithstanding this differential, the Executive Secretary had ex-

amined the files of the sixty-one registrants, had taken notes, and was fully prepared to testify. The necessity of putting the government on notice relates not to the form of evidence which the government must present, but rather to whether it must present evidence at all. Without appreciably greater preparation, the Executive Secretary could have testified from selected documents in the registrants' files where they were necessary to supplement the Form 102 books.

We do not, however, think it appropriate to order a new trial. As we indicated in *Yates* and have reaffirmed here, proper order of call is not to be treated as an ordinary "element of the offense". Having reconsidered our dictum in *Yates* that order of call is a question for the jury, we presently feel that the complexity of order of call makes it an issue to be addressed to and decided by the court.

Innumerable cases have held that in a prosecution for failure to report for or to submit to induction or to report for civilian work, the question of whether the registrant was properly classified so as to make appropriate an order to report has been held to be one for the court, *see*, *e. g.*, Cox v. United States, 332 U.S. 442, 68 S.Ct. 115, 92 L.Ed. 59, rehg. denied, Thompson v. United States, 333 U.S. 830, 68 S.Ct. 449, 92 L.Ed. 1115 (1947); Lancaster v. United States, 153 F.2d 718, 723 (1st Cir. 1946); indicating that the Sixth Amendment right to a jury trial in a criminal case is not infringed by entrusting the court with some authority to test the adequacy of local board actions. The Ninth Circuit has gone well beyond *Cox* in stating that all issues relating to the validity of the induction order are for the court. United States v. Lloyd, *supra*, 431 F.2d at 164. *Cf.* United States v. Witmer, 115 F.Supp. 19 (M. D.Pa.1953), aff'd, 213 F.2d 95 (3d Cir. 1954), aff'd, 348 U.S. 375, 75 S.Ct. 392, 99 L.Ed. 428 (1955) (reopening and reclassification).

Taking no position on the broader reaches of this approach, we note that

one of the issues expressly held to be for the court in *Lloyd* and in United States v. Jones, 431 F.2d 619 (9th Cir. 1970), cert. denied, 401 U.S. 926, 91 S.Ct. 882, 27 L.Ed.2d 829 (1971), was whether the local board had observed the relevant regulations in establishing its order of call. With this we agree, at least as a general matter. Our ruling that the government must sustain its burden with documentary evidence when available means that, as a practical matter, the order of call issue will turn not on the credibility of witnesses but on whether the board, on uncontroverted facts, has followed its regulations in ordering a particular registrant to report for induction. Such is evidently the case here. Accordingly, we remand to the district court for a hearing to determine whether King was prejudiced by an improper order of call. Unless the issue is shown on remand to depend on the credibility of witnesses, we instruct the court to decide the issue.

On remand, the court need not reopen entirely the order of call question. The appellant did not seek discovery of the selective service files of the two hundred or even of the sixty-one contested registrants, and cannot now do so by indirection. Documentary evidence, supported by testimonial evidence to the extent necessary, should be taken as to the reasons for the board's bypass of the sixty-one registrants discussed at trial. This need not be an extended inquiry. The Executive Secretary testified, for example, that, as to twenty-nine of the sixty-one registrants, the registrants were reclassified after the compilation of the Delivery List (SSS Form 261) on the basis of new information supplied to the board prior to the compilation. As to these, assuming no irregularity, the government need only introduce copies of the registrants' correspondence to the board setting forth the new information. The Executive Secretary testified that thirteen additional registrants were not called because they had not been fully examined. As to these, again absent an apparent irregularity, the government

need only introduce such documents as are required to establish that the registrant should not have been ordered to undergo examination prior to King or that postponement was justified by some other regulation. The Executive Secretary testified that seven registrants were not called because they had failed to report for induction on an earlier occasion. It would suffice for the government to introduce a document from each registrant's file indicating that he failed to report. Appellant conceded at trial that one of the challenged sixty-one had in fact been ordered to report at the same time as King. Documentary evidence substantiating the varied reasons for not calling the remaining eleven registrants would be hardly more extensive. If, after such hearing, which might appropriately be conducted by a magistrate, the district court concludes that the government has established beyond a reasonable doubt that fifty or more of the sixty-one registrants were properly bypassed, appellant's conviction will stand. If not, appellant will be acquitted.

 Because of the confusion surrounding the order of call question in this and other cases, we add this afterword. In cases coming to trial in February, 1972, or later, a defendant will be deemed to have waived the order of call issue if he failed to raise it, after discovery, by moving for a judgment of acquittal on that ground prior to the trial-in-chief. Liberal discovery or inspection of the files consistent with the Federal Rules of Criminal Procedure shall be afforded upon application, although the court may impose such restrictions as may be necessary to protect the confidentiality of selective service files. After discovery, the defendant shall designate those registrants who he has reason to believe should have been called for induction before he was called. The district court, assisted by a magistrate where desired, shall hear any such motion prior to the trial, except that in a jury-waived trial the court may if it chooses consolidate the hearing and the trial. At any hearing called for this purpose, the government shall bear the burden of demonstrating by documentary evidence concerning the designated registrants, supplemented by testimonial evidence where necessary, that the defendant was not prejudiced by an improper order of call. The court shall then determine the issue, except that in a jury trial the court shall reserve for the jury any justifications for bypassing registrants which depend on the credibility of witnesses if the issue turns on such bypasses.

Remanded for further proceedings as to the order of call. Affirmed in all other respects.