**UNITED STATES of America,
Appellee,**

v.

**Wayne Douglas KING, Defendant,
Appellant.**

**No. 72–1372.**

United States Court of Appeals,
First Circuit.

Heard Jan. 4, 1973.

Decided Feb. 16, 1973.

Lawrence E. Katz, Cambridge, Mass., by appointment of the Court, with whom Haroz, Katz, Rockwell & Sager, Cambridge, Mass., was on brief, for appellant.

Robert B. Collings, Asst. U. S. Atty., with whom James N. Gabriel, U. S. Atty., was on brief, for appellee.

Before COFFIN, Chief Judge, McENTEE and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This appeal is another chapter in the litigation we considered in United States v. King, 455 F.2d 345 (1st Cir. 1972) (*King I*), and more broadly governed by the principles we announced in United States v. Griglio, 467 F.2d 572 (1st Cir. 1972). It represents the increasing scope and depth of inquiry stimulated by the order of call defense. Hopefully, because of the recent change in the nation's approach to acquiring its military manpower, it is one of the last of its genre.

When appellant was before us in *King I*, we remanded the case to the district court for a hearing before the court or a magistrate to receive documentary evidence concerning the bypass of sixty-one older registrants. There having been ten younger (not eleven as we erroneously said, 455 F.2d at 351) registrants who were ordered on January 16, 1969 for induction with appellant, the government had the burden of showing that at least fifty-one of the older registrants were properly bypassed. Hearing was held before a magistrate, who concluded that fifty-six were properly bypassed. The district court found that "50 or more" were properly bypassed. Although the government admits that it must meet its burden of proof as to 51 registrants, in light of the error just noted, the district court was correct in thinking that only 50 more need be established, since the defendant had conceded at the original trial that one of the 61 under challenge was not improperly bypassed. Thus, since the government has conceded five, it must still prove the propriety of the bypass of 50 of the 55 registrants still in dispute to sustain the conviction. Conversely, appellant must prove improper the bypass of six or more to overturn the conviction.[1]

On this appeal, appellant challenges only 27 registrants. More than one ground is asserted for the allegedly improper bypass of some of these registrants. There are two major groups, accounting for 25 of the registrants: a group of 18 registrants who, because of their wives' pregnancies, were put in an "awaiting Board action" category pending reclassification into Class III–A, and a group of 10 older registrants (including three members of the former group) whose physical examinations were delayed, to appellant's alleged prejudice. Two other registrants are challenged on separate grounds.

■ We take as our standard for measuring error that which we enunciated in *Griglio, supra,* 467 F.2d at 577:

". . . we will not deem a violation of a regulation as applied to third persons a deprivation of due process

---

[1] Appellant raised, in his post-hearing memorandum, the issue that there has been an overcall, 47 registrants having been called in his month to fill a request for 43. Were this issue before us and decided for appellant, the government would have to prove that 55 of the 61 challenged registrants, or 54 of the remaining 55, were properly bypassed. Defendant, however, was made aware of this discrepancy at the original trial, when the government introduced as an exhibit the Delivery List for February, 1969, which stated that the "number called for" was 43 but the "number listed from this board" was 47. His failure to raise this issue before the close of even the second hearing deprived the government of an opportunity to introduce evidence to justify the call of 47. We therefore do not consider this challenge.

as to a registrant unless it is apparent that favoritism to another or discrimination against the registrant was intended, or unless the violation is so flagrant and serious that, whether intended or not, concern for fair and efficient administration justifies the sanction of voiding an induction adversely affected by the violation."

Our review in this case indicates no purposeful discrimination, or, except as to two registrants, violation of a serious or flagrant nature.

■ The group of 18 fatherhood dispositions is variously attacked. All 18 were challenged because of the action of board employees, pursuant to a board directive, in placing the registrants then I-A in a category called "awaiting Board action" upon receipt of a letter indicating pregnancy. The evidence was not presented to the board until the birth occurred.[2] There is here no assertion that board employees acted without board authority. We see no flagrant error or any prejudice in the failure of the board to review these files more promptly. The fact is that, as of January 16, 1969, all 18 qualified for a III-A deferment. As to 13 of the 18, appellant challenges the legal sufficiency of the medical diagnoses of pregnancy, for lack of reference to a medical test, as required by 32 C.F.R. § 1623.30(c)(3). As to one, the child had been born as of January 16, 1969 and as to the others later birth records verify their indisputable status as expectant fathers as of the same date. We are not persuaded by appellant's reliance on technical defects in documents to prove the nonexistence of a condition which later events proved to have existed.

■ As to five of the 18, who held a II-S classification before and slightly after the effective date of the Military Selective Service Act of 1967, appellant argues that they were ineligible for a fatherhood deferment because they were "classified in Class II-S after [such] date." 32 C.F.R. § 1622.30(a) (1967). While we agree with the appellant that the regulation could have been written more precisely—e. g., "classified into Class II-S", "granted a II-S classification", or "requested and received a II-S classification", see Gregory v. Tarr, 436 F.2d 513, 517 (6th Cir. 1971), or, on the other hand, "holding a II-S classification", we cannot deem unreasonable the Selective Service System's interpretation of its own regulation, United States v. Groupp, 459 F.2d 178 (1st Cir. 1972), to mean only new classification action into II-S rather than the continuation of a pre-existing status. The regulation was designed to reflect Congressional concern that registrants could avoid the draft entirely by "pyramiding" deferments under the Act. *Gregory, supra.* We see the argument that this policy could be applied equally well to those receiving a II-S deferment in January, 1967 as to those receiving one in July, 1967. But it is equally reasonable to conclude that the President may have felt that those relying on the prior Congressional and administrative policy should not have their reasonable expectations disturbed.

■ Two of the 18 registrants filed a statement of preinduction order pregnancy after they were ordered to report. In both cases, the induction orders were "cancelled" apparently pursuant to a telephone conversation with state headquarters. Appellant challenges those cancellations as illegal. The relevant regulation, 32 C.F.R. § 1622.30(c)(3), provided at the time that:

"(3) No registrant shall be placed in Class III-A under paragraph (a) of this section because he has a child which is not yet born unless prior to

2. Here, as in the overcall argument, appellant added a ground after it could be exposed to contrary evidence—the argument that, even if their deferment was proper, putting these men into a I-A "awaiting Board action" category rather than into the III-A category had the effect of inflating the quota expected from appellant's board. The government denies appellant's assertion. We do not entertain the argument.

the time the local board mails him an order to report for induction *which is not subsequently cancelled* there is filed with the local board the certificate of a licensed physician . . . ." [Emphasis added.]

Although the regulations authorize the State Director to "postpone" an induction "for good cause, at any time after the issuance of an Order to Report for Induction", 32 C.F.R. § 1632.2, the only provision for "cancellation" of an order to report is to be found in § 1625.14, which states that "The reopening of the classification of a registrant by the local board *shall cancel* any Order to Report for Induction." In light of the careful use of these separate terms, we cannot equate them. *See* Davis v. United States, 410 F.2d 89 (8th Cir. 1969). Thus, the appellant correctly states that the orders in these two cases could have been validly cancelled only if the affected registrants' classifications were properly reopened.

■ For that determination, we must fall back on the oft-litigated language of § 1625.2:

> "the classification of a registrant shall not be reopened after the local board has mailed to such registrant an Order to Report for Induction . . . unless the local board first specifically finds there has been a change in the registrant's status resulting from circumstances over which the registrant had no control."

Here the Executive Secretary's testimony clearly showed that the local board did not first make a specific finding to that effect; the staff placed the registrants in "awaiting Board action" status after receiving the letters and the matters were not placed before the board until after appellant's induction. Moreover, even if we assume that the board had made a general finding and that such a general finding satisfies this regulation, we still would find error. As all of the cases on point indicate, late assertion of a pre-existing pregnancy does not satisfy the requirements of § 1625.2

for a post-induction order change in status resulting from circumstances beyond one's control. United States v. Watson, 442 F.2d 1273, 1281–1282 (8th Cir. 1971); United States v. Hulphers, 421 F.2d 1291, 1293 (9th Cir. 1969); Morgan v. Underwood, 406 F.2d 1253, 1255 (5th Cir. 1969). *See also* United States v. Walker, 424 F.2d 1069 (1st Cir. 1970) (late assertion of pre-existing conscientious objector claim does not satisfy § 1625.2). Thus the reopening and cancellation was improper, and the government has failed to show that these two registrants were properly bypassed.

Attacks on four more of the 18 fathers are insubstantial and merit no discussion.

The group of 10 registrants whose physical examinations were not scheduled so speedily as registrant's consists of three subgroups. Three of these were in the group we have discussed, which awaited board action for a probable III–A classification. These, we have held, were properly bypassed.

■ As to a second subgroup of five registrants, older than appellant but not classified I–A until several months after him, appellant presents the sophisticated argument that they should have been called for *physicals* earlier than they were and, if they had been called with anything approaching the speed with which appellant was processed, and had been found acceptable, as two of them ultimately were (the other three never being subjected to examination), they would have been called for induction before him. His argument is premised on § 1628.11(b) which provides:

> "The local board shall, so far as is practicable, select and order to report for armed forces physical examination . . . registrants [who have been classified in Class I–A] who are nonvolunteers in the order of their liability for service."

He urges that the order of call is mandatory or that at least in the absence of a showing of impracticability in each particular case, the failure to follow this

order of call for physicals is a serious and flagrant violation of the regulation which leads to an improper and prejudicial bypass of older registrants. The government on the other hand contends first that, as we said in *King I, supra,* 455 F.2d at 353–354, it "need only introduce such documents as are required to establish that the registrant should not have been ordered to undergo examination prior to King", but that in any case, if it need go further, its burden is met if it shows the order of call for physicals "basically followed the regulations".

We refuse to follow either suggested extreme. At the time of our comments in *King,* we were thinking of the more typical claim—that an older registrant classified I–A before the defendant was not ordered for a physical before him— and not of this more sophisticated claim as to those classified I–A after the defendant. Now that we are aware, we hold that a defendant may invoke § 1628.11(b) and its order-of-call provisions. As to appellant's first contention, it is clear that the order is not mandatory; the words "as far as is practicable" are not surplusage. Addressing his second contention, we also do not think that the requirement of impracticability is as strict as he suggests. It is one thing to require, as courts have repeatedly done, strict adherence to the statutorily-mandated order of call for inductions. We have canvassed in *Griglio* the reasons for that approach. But it does not follow that we must also insist on the same punctilio as to physicals, or other required steps, which, though necessary to the ultimate issuance of the orders to report for induction are not determinative of their issuance or ordering. While we would not tolerate purposefully discriminatory ordering of physicals, or substantial though unintentional skewing of the order, we will not require particularistic explanations of impracticability when only five out of 421 orders for physicals in an eight-month period are shown to have been out of order.

The third subgroup of registrants includes two who had their physicals transferred to another board. The reports on those physicals did not arrive at the appellant's board for some months. The appellant points to no irregularity, but only to the length of time involved.

Finally, the cases of two additional registrants, alleged to have been improperly bypassed for other reasons, do not merit prolonging this review. Since we find that only two registrants were improperly bypassed, the government has satisfied its burden of proof and the conviction must be sustained.

Affirmed.