Patrick J. O'SHEA, Petitioner,
Appellant,

v.

UNITED STATES of America,
Respondent, Appellee.

No. 73-1333.

United States Court of Appeals,
First Circuit.

Submitted Dec. 4, 1973.

Decided Feb. 7, 1974.

Patrick J. O'Shea on brief pro se.

James N. Gabriel, U. S. Atty., and Edward J. Lee, Asst. U. S. Atty., on .brief for.appellee.

Before COFFIN, Chief Judge, ALDRICH and McENTEE, Circuit Judges.

ALDRICH, Senior Circuit Judge.

Petitioner O'Shea was convicted of armed bank robbery, 18 U.S.C. § 2113(d), after a jury trial. Before sentencing, the district court reviewed a presentence report which disclosed that this was petitioner's second such offense. It also showed eight state misdemeanor convictions ranging from assault and battery and unlicensed carrying of a revolver, to contributing to the delinquency of a minor. Stating, *inter alia*, that it regarded his record as "serious," the court imposed a 20-year sentence, the permissible maximum being 25. Thereafter petitioner brought this 28 U.S.C. § 2255 proceeding asserting that all of the convictions except the prior bank robbery had been uncounselled, and that under United States v. Tucker, 1972, 404 U.S. 443, 92 S.Ct. 589, 30 L. Ed.2d 592, he was entitled to be resentenced. The district judge (not the sentencing judge), referred the petition to a magistrate, who filed a memorandum stating simply that in *Tucker* the prior convictions had previously been set aside in a court of competent jurisdiction; that this was not so in the case at bar, and hence *Tucker* did not control.

Without discussing any law on this subject, the magistrate recommended that the petition be dismissed without prejudice. The court thereupon, without affording petitioner an opportunity to be heard, dismissed the petition without opinion.

Thereafter petitioner requested a rehearing. He accompanied this request with documents supporting his allegations that he had not been represented by counsel in the prior criminal proceedings, and furnished a substantial compilation of cases from other circuits holding, or suggesting, that the sentencing court must make its own determination of the constitutionality of prior convictions. that it relied on to enhance a sentence rather than require them to be formally set aside. This petition was referred back to the magistrate, who filed a memorandum stating, on the basis of a single example, that "quite often" the records of other courts did not give the full picture, and that in spite of the documentation submitted by petitioner the convictions may have in fact been proper. He concluded that since the "official court records are not sufficient in every case . . . the decision should be made elsewhere." Again, no legal authority was cited in support of this conclusion, and no mention was made of the cases to the contrary elsewhere. The district judge, again without opportunity for petitioner to be heard, wrote at the foot of this memorandum, "Affirmed."

If the only question before us was the legal correctness of the magistrate's— and the district court's—views, we would dispose of this case by a simple reversal on the authority of our later case of United States v. Sawaya, 1 Cir., 1973, 486 F.2d 890.[1] However, there is much more than this. The magistrate's report, in reciting factors which persuaded him and ignoring everything to the contrary, indicated a misconception of his duties.

Under the Federal Magistrates Act, 82 Stat. 1108 (1968), 28 U.S.C. §§ 631–639, a magistrate's primary function is not to supplant, but is to assist judges. Except to the extent that weight attaches to his findings when acting as a special master, we have made it clear that at least in matters of importance the magistrate decides nothing, but merely recommends, Reed v. Board of Election Comm'rs, 1 Cir., 1972, 459 F.2d 121; Rainha v. Cassidy, 1 Cir., 1972, 454 F.2d 207; cf. United States v. Edson, 1 Cir., 1973, 487 F.2d 370; the burden of decision remains exclusively on the judge. See TPO, Inc. v. Mc-Millen, 7 Cir., 1972, 460 F.2d 348; Dye v. Cowan, 6 Cir., 1972, 472 F.2d 1206, 1206 n.1. This is in accordance with the act, which provides, 28 U.S.C. § 636(b), that the majority of the judges of a district court may assign, inter alia, the following duties to a magistrate.

"(1) service as a special master in an appropriate civil action ' . . .

"(2) assistance to a district judge in the conduct of pretrial or discovery proceedings in civil or criminal actions; and

"(3) preliminary review of applications for post-trial relief made by individuals convicted of criminal offenses, and submission of a report and recommendations to facilitate the decision of the district judge having jurisdiction over the case as to whether there should be a hearing." [2]

What would seem to us the plain meaning of the language of presently pertinent subsection (3) is borne out by the legislative history. The Committee on the Administration of the Criminal Law of the Judicial Conference of the United States, in a report on S. 945 recommended the addition of the final clause

1. In addition to representative cases from the 5th and 8th circuits cited in Sawaya, see United States v. Martinez, 7 Cir., 1969, 413 F.2d 61. And see Tucker itself, 404 U.S. at 448 n. 6, 92 S.Ct. 589.

2. These provisions were adopted by the Rules for United States Magistrates of the Massachusetts District, Rule 2(b).

of that section to "make it clear that it is the judge's responsibility to make the ultimate decisions and to hold hearings on such applications, rather than that of the magistrate." *See* Hearings before the Subcommittee on Improvements in Judicial Machinery of the Senate Committee on the Judiciary on S. 3475, 89th Cong.2d Sess., and S. 945, 90th Cong., 1st Sess., at 245 (May 25, 1967).

■ However appropriate it may be for a judge to render an opinion that dismisses, *sub silentio*, all contrary authorities, a report by a magistrate in that vein scarcely "facilitate[s] the decision of the district judge" whose obligation it is to consider both sides of the case. To the extent that by its silence the report suggests that no other relevant material is known, it not only is not helpful, it is likely to be affirmatively misleading and detrimental. Whether the magistrate is dealing with a factual or a legal [3] situation, his basic obligation is to furnish a full account of all argumentatively relevant matters to enable the court to make the appraisal.

We do not mean by this that the magistrate, after setting forth all the factors, should not recite his own conclusions; the statute expressly provides for his recommendation. The views of an experienced magistrate as to how the case should be decided can be of great assistance.[4] Indeed, because of the limited, and hence repetitive nature of his jurisdiction, a magistrate may come to have more familiarity with a question than does some individual judge. The report, however, is the primary obligation; his recommendation, secondary.

■ This leads us to a comment upon the court's duty, or more exactly, the weight to be given a report. The procedural error committed here of "affirming" the magistrate's memorandum, as distinguished from entering a full order, suggests a possible misconception of substance. When acting under subsection (3) a magistrate's conclusions are not to be given any weight, or presumption that they are to be adopted unless plainly wrong. The report, not to be thought of or denominated as an opinion, is not a decision of any sort. The original, and only order is the court's, which is entirely free to do as it chooses. *See* n.4, ante.

■ Correspondingly, unless the particular claim is frivolous, or the matter requires immediate disposition, it would normally seem desirable to allow parties to comment before a magistrate's recommendation is acted on. *Cf.* Rainha v. Cassidy, ante, 454 F.2d at 208. Our somewhat elliptical language in that opinion, while perhaps thought by some to be directed only to procedure, has been read as a disapproval of evidentiary hearings by magistrates in habeas cases. *See* n.4 in Bridwell v. Ciccone, 8 Cir., 1973, 490 F.2d 310. Although the matter has never been presented to us in an adversary manner, and is not now, the issue has arisen elsewhere and it is perhaps time that in exercise of our supervisory power we express our views in definitive form.

■ The fact that subsection (1) makes a general provision for the appointing of a magistrate as a special master, and subsection (3) gives a much more specific recitation for post convic-

---

3. How far a magistrate should make a legal study is a matter to be determined in the particular instance. In the case at bar a legal study in some depth had been submitted to him which, although he might have thought wrong, he could not have thought irrelevant.

4. "A qualified, experienced magistrate will, it is hoped, acquire an expertise in examining these [post conviction review] applications and summarizing their important contents

for the district judge, thereby facilitating his decisions. Law clerks are presently charged with this responsibility by many judges, but judges have noted that the normal 1-year clerkship does not afford law clerks the time or experience necessary to attain real efficiency in handling such applications." Senate Committee on the Judiciary, 90th Cong., 1st Sess., "The Federal Magistrates Act", report on S.945, Rep.No.371, at 26 (June 28, 1967).

tion relief proceedings in itself suggests that the latter is the sole procedure to be adopted in such instance. If there could be doubt about this, we believe it to be answered by the Report of the Committee on the Administration of the Criminal Law of the Judicial Conference, quoted ante. When a criminal proceeding has reached the stage of final sentence having been imposed, any further decision should be by the district judge, and not by a magistrate even to the limited extent of making findings of fact with the weight that normally attaches to the findings of a master. This should particularly be so, as a matter of comity, in the field of federal state relations when dealing with habeas corpus.

■ The Sixth Circuit has concluded that in the case of post conviction relief a magistrate should not hold evidentiary hearings at all. Wedding v. Wingo, 6 Cir., 1973, 483 F.2d 1131, cert. granted 1974, 414 U.S. 1157, 94 S.Ct. 914, 39 L. Ed.2d 109. The Eighth has taken a middle course. Bridwell v. Ciccone, ante; Noorlander v. Ciccone, 8 Cir., 1973, 489 F.2d 642. We accept what we understand to be the Eighth Circuit view (although we find the district court rules the court approved possibly ambiguous). In sum, a magistrate, acting under subsection (3), may hold a hearing; he may receive the state court record, and any undisputed documents the parties care to submit; Belbin v. Picard, 1 Cir., 1972, 454 F.2d 202; United States v. King, 1 Cir., 1973, 474 F.2d 402; he may receive stipulations. Mawson v. United States, 1 Cir., 1972, 463 F.2d 29. In addition, he may take evidence, but with the sole object of leading to findings of fact that all parties accept. No finding to which any party duly objects should be given any weight

by the district court, and no oral evidence presented to the magistrate should be considered by the district court in written form as, in effect, a deposition, if any party objects. In other words, hopefully the magistrate may accomplish an agreed record, but to the extent that he does not, any party is entitled to a full trial de novo.

■ Returning to the merits of this case, the government takes the position that the record "conclusively shows," 28 U.S.C. § 2255, that petitioner is entitled to no relief because the misdemeanor convictions were inconsequential. It may be, on judicial reflection, that in the sum total of things they were of no material consequence, but we could not conceivably say so as matter of law in the light of the sentencing judge's specific reference to the seriousness of petitioner's record.[5] We note that our uncertainty in United States v. Sawaya, ante, whether Argersinger v. Hamlin, 1972, 407 U.S. 25, 92 S.Ct. 2006, 32 L. Ed.2d 530, was retrospective has since been resolved in favor of retrospectivity. Berry v. Cincinnati, 1973, 414 U.S. 29, 94 S.Ct. 193, 38 L.Ed.2d 187. Petitioner is entitled to a hearing, and to be resentenced if his contentions are correct.

A question remains, whether the remand should be to the original sentencing judge or to another. As we recognized in Halliday v. United States, 1 Cir., 1967, 380 F.2d 270, aff'd 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16, and as recently as in United States v. Sawaya, ante, there should be no absolutes in this area. However, given a freedom of choice, there may often be preferences. The variations of this problem are many, and the facts in this case suggest a general review.

5. Petitioner argues that since the court used the word "record" in the plural, it must have had in mind his misdemeanor convictions as well as the single, admittedly valid, armed robbery conviction. This is an unwarranted assumption. The court was addressing two defendants simultaneously, and would naturally have used the word in the plural even if each defendant had had only one relevant prior conviction. It may be that the court gave substantial weight to the misdemeanor convictions, or it may be that it did not. We express no opinion, except to say that the use of the word record in the plural supplies no answer.

779

The most important matter is the nature of the new proceeding and its relationship to the old one. If, for example, the case is remanded for a new factual determination by the district judge, the fact that he has already made a resolution, particularly if this involved error on his part, may make it difficult for him to reapproach the question with a free and open mind. On the one hand, he may find it difficult to rid himself of his prior conclusions. More likely, he will tend to lean over backwards. Even if he overcomes both difficulties, it may not be without great personal effort. At the same time, both parties may be apprehensive of the obstacles in the way of its accomplishment. In these cases we have indicated a strong preference for a new fact finder. Murray v. United States, 1 Cir., 1962, 300 F.2d 804 (non-jury trial); Commissioner of Internal Revenue v. Young Motor Co., 1 Cir., 1963, 316 F.2d 267 (Tax Court judge); Haverhill Gazette v. Union Leader Corp., 1 Cir., 1964, 333 F.2d 808, cert. denied 379 U.S. 931, 85 S.Ct. 329, 13 L.Ed.2d 343 (master); Halliday v. United States, ante, (voluntariness of plea). The problems are much less acute when the new trial is to be before a jury. Even there, however, particularly in a criminal case a defendant may fear vindictiveness on the part of a judge whom he has shown to be in error. Cf. North Carolina v. Pearce, 1969, 395 U.S. 711, 724–725, 89 S.Ct. 2072, 23 L.Ed.2d 656. If, on the other hand, the new trial followed a mistrial, or was ordered by the trial judge himself, no detriment would seem to flow from continuing with the same judge.

On the other side of the ledger, reconsideration by the original judge may be affirmatively desirable when familiarity with the case is important, and for a new judge to achieve familiarity would require wasteful delay or duplicated effort, or when the original judge has unique knowledge of relevant facts which he might legitimately use to augment the record. See, e. g., United States v. Cleveland, 7 Cir., 1973, 477 F.2d 310, 316 n.11; James v. United States, 8 Cir., 1973, 476 F.2d 936; semble: United States v. Carmichael, 1972, 152 U.S.App.D.C. 197, 469 F.2d 937; Cross v. United States, 1968, 128 U.S.App.D.C. 416, 389 F.2d 957.

Such circumstances, to the extent that they are present, call for a balancing.[6] Thus, in a resentencing on a plea, even though the original judge committed no error, but a new judge could readily learn all there was to know at the hearing and through reading the presentence report, we have remanded to a new judge. Mawson v. United States, 1 Cir., 1972, 463 F.2d 29. However, in the case at bar we believe, on further consideration of our statement in United States v. Sawaya, ante, 486 F.2d at 893, the balance to be the other way. Having presided at a full trial, the original judge has a unique knowledge of the case. So, too, he has unique knowledge of how much weight, in determining sentence, he gave to the prior, now to be considered erased, convictions.[7] A new judge would lose the benefit of both of these matters and might easily give too much weight, or not enough weight, to the diminution of those now contested records. If the issue is what would the defendant's original sentence have been if, assuming defendant's present allegations to be true, the presentence report had been appropriately limited, which, optimally is what the issue should be, no one but the original judge could normally answer that question. If the issue were simply what would be an appropriate sentence on the revised record, a different judge could address the question,

6. Another factor that enters into the scale is the relative unavailability of a new judge in a single-judge district. See Halliday v. United States, ante, 380 F.2d at 274.

7. Indeed, if he found, as only he could, that the contested convictions were not a significant factor in considering the original sentence no further inquiry would be necessary. McAnulty v. United States, 8 Cir., 1972, 469 F.2d 254, cert. denied 411 U.S. 949, 93 S.Ct. 1933, 36 L.Ed.2d 411. But see United States v. Tucker, ante, 404 U.S. at 449 n. 8, 92 S.Ct. 589, with which compare Hyland v. Department of Correction, 1 Cir., 1971, 445 F.2d 867.

but then the defendant might gain nothing even if the original judge did in fact rely on the allegedly defective prior convictions.

■ As against this, there would seem to be no persuasive factor contraindicating a return to the original judge. No criticism of him was involved in the post-sentencing discovery that he may have been given an impermissible presentence report, and there would seem no reason to assume that he would be unable to change his mind as to the appropriate sentence, if the changes so warranted. Rather than conceivable annoyance, the original judge would have every reason to welcome the opportunity to correct any inadvertent aggravation of injustices that may have been done the defendant in another court. *See* United States v. Tucker, ante, 404 U.S. at 448–449, 92 S.Ct. 589. We believe him the most competent one to do it. James v. United States, ante, *semble.* We accordingly reverse and remand to the original sentencing judge to consider, first, whether he would have imposed a different sentence had he known of the invalidity of the state convictions, and second, if so, to inquire as to those convictions and resentence, if called for.

In conclusion, we do not suggest that in this case, or in any case other than where the original judge was reversed for committing error in the course of making a finding of fact, a judge should not be free to decline to accept a remand, or, contrarily, to call for a remand to himself if, in his discretion, he believes it appropriate. Unless otherwise stated, our views in this area are hortatory, not imperatives. Happily we have no reason in this circuit to fear actual vindictiveness in the exercise of such discretion. The importance of the other considerations may vary from case to case, and although we may set general preferences, the final balance can often be best determined, in light of the general principles that we have outlined, by the district judge himself. *Cf.* Halliday v. United States, ante, 380 F.2d at 274.