UNITED STATES of America, Plaintiff-Appellee,

v.

Ray BURNETT, Defendant-Appellant.

No. 72–2591.

United States Court of Appeals, Fifth Circuit.

March 23, 1973.

John N. Barnhart, Houston, Tex., for defendant-appellant.

Anthony J. P. Farris, U. S. Atty., James R. Gough, Asst. U. S. Atty., Houston, Tex., for plaintiff-appellee.

Before ALDRICH *, SIMPSON and CLARK, Circuit Judges.

CLARK, Circuit Judge:

Ray Burnett appeals from his conviction for willful failure to report for and submit to induction into the Armed Forces of the United States, a violation of 50 App. U.S.C. § 462(a). We reverse and remand for a new trial.

██ Burnett asserts that the local Selective Service Board deviated from the regulations establishing the Order of Call for inductees, that he would not have been called had the Board complied with the regulations, and that as a result the order to report for induction was invalid. It is well established and the Government concedes that a registrant is entitled to be inducted in proper order; and that Burnett's contention, if proven, would constitute a good defense to the offense charged.[1] *See, e. g.,* United States v. King, 455 F.2d 345 (1st Cir. 1972); United States v. Dudley, 451 F.2d 1300 (6th Cir. 1971); United States v. Baker, 416 F.2d 202 (9th Cir. 1969).

Burnett attempted to establish his defense by producing the names of those whom it appeared, on the facts known to him, should have taken precedence in the Order of Call. Burnett's name appeared

---

* Hon. Bailey Aldrich, Senior Circuit Judge of the First Circuit, sitting by designation.

1. Though the language of the indictment asserts that Burnett failed to report for *and* failed to submit to induction, the record makes it clear that Burnett did indeed report but refused to step forward for induction. *Compare* Schutz v. United States, 422 F.2d 991 (5th Cir. 1970).

ninth from the bottom of his local board's monthly Delivery List. Thus, had Burnett been able to point out nine registrants who should have been ordered for induction before him but were not, he would have established that he was improperly placed on the Delivery List. At the time that Burnett was ordered to report, the prescribed Order of Call was (1) delinquents, (2) volunteers under 26 years of age, and (3) draftees over 19 and under 26 years of age. Burnett was in the third category. Within this category the regulation provided that those eligible would be called in the order of their birth dates with the oldest being selected first.

By examining the monthly Delivery Lists prepared subsequent to his own, Burnett ascertained they contained the names of 15 registrants who were under 26 years of age, older than Burnett, classified I–A, and who had been ordered for induction after Burnett. Burnett then offered the delinquency list containing the names of six registrants who by virtue of their delinquent status should have been ordered for induction prior to Burnett, if they could have been located. All of this evidence was excluded by the trial court. In addition, Burnett was precluded from examining the executive secretary of his Draft Board with reference to the Board's SSS 102 Book which lists in order of birth all the registrants born in the same year. The trial judge only permitted him to elicit the names of six registrants who were older than defendant and who were not called ahead of him, though Burnett contends that the SSS 102 Book contained the names of 13 additional such registrants. Burnett asserts that but for the restrictions placed on the reception of probative evidence by the trial court, he could have adduced proof that 40 men who apparently should have been called prior to him were not.

■ The Government correctly observes that the actions of draft boards, like those of other officials, are imbued by the law with a presumption of regularity. However, in this case, the court's stringent rulings effectively blocked the only chance Burnett may have had of neutralizing this presumption by establishing that at least nine of these 40 registrants were required to be called before he was. Not only was Burnett thus thwarted in his proffer of proof, but his adversary, who was the custodian of all the information he sought to adduce, claimed the benefit of the court-created presumption that its governmental actions were correct. The presumption of official regularity is a proper shield against reckless harassment of public servants. But shield not shroud it is. Justice will not permit it to become a cloak to hide all official action from court scrutiny. Once the defendant has brought forward the most probative evidence he can reasonably adduce that an apparent irregularity exists, the government then can no longer withhold crucial evidence it possesses and insist on retaining the presumption that its unrevealed cache of truth would demonstrate its actions were proper. *See* United States v. King, *supra;* United States v. Dudley, *supra;* United States v. Baker, *supra;* Rusk v. United States, 419 F.2d 133 (9th Cir. 1969); Yates v. United States, 404 F.2d 462 (1st Cir. 1968), reh'g denied, 407 F.2d 50 (1st Cir.), cert. denied 395 U.S. 925, 89 S.Ct. 1781, 23 L.Ed.2d 242 (1969).

■ We do not hold the Government can be required to violate the confidentiality of draft records conferred by law. Our ruling only means that it must meet a prima facie case of irregularity such as Burnett made here with something more probative than the legal fiction of presumed regularity or forego its prosecution.

■ Another error in this record would equally mandate reversal and since the case must be remanded for another trial it should be reached now. The charge to the jury in this case on the presumption of regularity sails so perilously close to the shoals of a directed verdict of guilt it must not be repeat-

ed. The text is set out in the margin.[2] It may be possible for a sophisticated student of the law to draw the fine distinction which the Government asks us to discern—that the charge meant only to advise that the defendant was not entitled to a directed verdict of acquittal —but the probability is that a jury could not. . Even learned counsel with the benefit of calm hindsight and textbook study is unable to suggest why this advice was necessary when its potential for prejudice was so great. We have no hesitancy in holding its impact on the jury's deliberation requires that the retrial be conducted without its taint.

■ Burnett contends that the thirty month interval between his indictment and trial in and of itself establishes as a matter of law that he was denied his constitutional right to speedy trial. We disagree. The record shows that at no time during the thirty month period did the defendant seek or request 'that a trial date be set. The recent decision of United States v. Dyson, 469 F.2d 735 (5th Cir. 1972), relied upon at oral argument, does not mandate a different result. There the court specifically noted in its discussion of the principles set out in Barker v. Wingo, 407 U.S. 514, 92 S. Ct. 2182, 33 L.Ed.2d 101 (1972), that there was no indication that Dyson was even aware of his right to a speedy trial since counsel was not appointed to represent him until four days before trial. Burnett, on the other hand, was represented from the beginning by competent counsel. The only logical conclusion which can be drawn from this state of facts is that Burnett, who was not then confined, had no desire to have his case brought on for trial.

■ In the alternative, Burnett argues that, even if his right to a speedy trial has not been abridged by the thirty month delay standing alone, the right has been denied nevertheless because of the prejudice which he has suffered from the Government's delay. Specifically, he contends that the Government, in accordance with its standard policy to retain records for no more than one year, destroyed certain records which could have been relevant to his defense. It is conceded that it was improper to routinely apply this procedure to materials directly related to an issue in pending, untried litigation. The court views this destruction with even more concern because of the fact that some of the very records destroyed apparently were the object of discovery motions by Burnett. Though the Government ultimately gave Burnett some documentation which he sought, it refused to produce all of the written materials demanded, claiming that they were irrelevant, immaterial or privileged. We are unable to determine from the record on this appeal what degree of prejudice, if any, Burnett may have suffered from the destruction and intimate no ruling on the merits of this point. However, if Burnett chooses to pursue this issue on remand, the district court is directed to examine this contention, and determine just what records were

2. It is the general duty of the local board, selective board to induct registrants in a proper order of call. Failure to do so may invalidate the induction order. You are instructed that a presumption of regularity supports an order of induction by the local selective board. You are further instructed, as a matter of law, that the registrant in this case has raised no issue that would, in itself, alter this rebuttable presumption of regularity. The order of call in this case has not been shown to be either an improper punishment or, on the face of the record, a clear violation of the selective Service regulations. The registrant must bring forth sufficient evidence to overcome the presumption of regularity that pertains to his order of call, and if you, the members of the jury, find the registrant has brought forth sufficient evidence to overcome this general presumption of regularity, then, by his evidence the registrant demonstrates under all the facts and circumstances of this case that his order of call by the local selective service board was basically and fundamentally unjust, unfair and wrongful and then, in that event, but only in that event, members of the jury, you may acquit the defendant on the grounds of an improper order of call.

destroyed and whether their destruction prejudiced Burnett in his defense. If prejudice is found the teachings of *Barker* and *Dyson* would mandate dismissal.

Reversed.