UNITED STATES of America,
Plaintiff-Appellee,

v.

Peter Fleming HOFFMAN, Defendant-Appellant.

No. 73-2140.

United States Court of Appeals,
Fifth Circuit.

Jan. 28, 1974.

924

Eugene A. Deal, Atlanta, Ga., (Court-appointed), for defendant-appellant.

John W. Stokes, U. S. Atty., Stanley M. Baum, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

The draft has ended but all that preceded its ending is neither forgiven nor forgotten.

Peter Fleming Hoffman refused to take the symbolic step forward after being processed for induction into the army and was convicted of violating 50 U.S.C. § 462, Appendix. On this appeal he argues for reversal on the basis of three defenses that were rejected by the trial court: (1) improper order of call; (2) local board error in failing to consider his post-induction notice conscientious objector claim; and (3) violation of the President's order cancelling draft calls for November and December, 1969. Finding each defense without merit, we affirm.

Hoffman registered for the draft in September 1965 at age 18. Until June 1969 he received a Class II–S (student) deferment [1] while attending college. On June 27, 1969 his local board reclassified him in Class I–A [2] after learning from his response to its current information questionnaire (SSS Form 127) of June 3 that he was to graduate from college on June 15. Hoffman appealed this reclassification within the Selective Service System on the basis that his upcoming position as a graduate teaching assistant in college mathematics qualified him for a Class II–A (occupational)

1. 32 C.F.R. § 1622.25 (1969).  2. 32 C.F.R. § 1622.10 (1969).

deferment.[3] While this appeal was running its procedural course, the local board was taking the necessary steps leading to Hoffman's induction. In July, 1969 Hoffman was given a pre-induction physical examination and found acceptable. A statement of his physical acceptability for the draft (DD Form 62) was mailed to him on October 1. On October 23, 1969 the Appeal Board decided to classify Hoffman in Class I–A. On November 17, 1969 the Local Board mailed to Hoffman an Order to Report for Induction on December 1, 1969. However, the Board agreed to postpone his induction at least until October 1, 1970 to allow completion of the school year already begun. In August 1970 Hoffman sought a Class I–O (conscientious objector) classification,[4] but the Board declined to reopen and reconsider his draft status. On October 20, 1970 Hoffman appeared, as required, at the induction center but refused to be inducted. This action led to his indictment and conviction.

### Order of Call

█ Hoffman initially urges that his call was out of the proper order. The reasons for allowing an order of call defense lie on two levels. On a general level the defense serves to insure that the Selective Service System implements the various sociological, political and economic considerations reflected in the sequence of induction established by Congress. On an individualized level, it safeguards each registrant's due process rights to objective treatment by the Selective Service System in accordance with its own regulations. *See* United States v. Johnson, 476 F.2d 1251 (5th Cir. 1973); United States v. Strayhorn, 471 F.2d 661 (2d Cir. 1972); and United States v. Dudley, 451 F.2d 1300 (6th Cir. 1971).

██ Courts have developed more or less specific rules as to the procedures which must be followed in developing an order of call defense—what substantively must be shown by the registrant to raise the defense and the extent of the government's burden in response. To assert the defense in this circuit, a registrant must report for induction processing and there refuse to be inducted. He cannot rely upon it in a prosecution for failure to report to the induction center. *Compare* Schutz v. United States, 422 F.2d 991 (5th Cir. 1970), *with* United States v. Burnett, 476 F.2d 726 (5th Cir. 1973). According the usual presumption of regularity to the actions of the Selective Service System, proof of proper order of call is not an element of the government's case in chief. Only after evidence has been introduced by the defendant that specific other registrants with a higher call priority than defendant were eligible to be called and that their calling would have postponed the call of the defendant, does the burden shift to the government to demonstrate that the order of call of such other registrants was not improper. United States v. Burnett, *supra*; United States v. Johnson, 476 F.2d 1251 (5th Cir. 1973); United States v. Dudley, 451 F.2d 1300 (6th Cir. 1971); and Little v. United States, 409 F.2d 1343 (10th Cir. 1969). The government's burden in response to the defendant's *prima facie* showing is to prove that the local board acted in accordance with the Selective Service regulations in not calling those registrants, suggested by the defendant, with seemingly higher priority.

█ However, this latter burden must be viewed in light of the limited standard of review in Selective Service cases, and thus, letter perfect compliance with the regulations is not required. The proper standard is as stated in United States v. Griglio, 467 F.2d 572 (1st Cir. 1972).

> [W]e will not deem a violation of a regulation as applied to third persons a deprivation of due process as to a registrant unless it is apparent that favoritism to another or discrimina-

---

3. 32 C.F.R. § 1622.22 (1969).

4. 32 C.F.R. § 1622.14 (1969).

tion against the registrant was intended, or unless the violation is so flagrant and serious that, whether intended or not, concern for fair and efficient administration justifies the sanction of avoiding an induction adversely affected by the violation.

[467 F.2d at 577]

*See also* United States v. King, 474 F.2d 402 (1st Cir. 1973) ; United States v. Strayhorn, *supra.*

■ Hoffman introduced the names of five registrants older than he, who were classified I–A at the time of his induction. He asserted that under the then existing "oldest first" priority for induction,[5] these men should have been called before him. If Hoffman had not been called in December 1969 he would have been selected under the lottery or random selection system which went into effect on January 1, 1970 and, because of his high lottery number, would not have been called at all. This evidence of bypass resulting in prejudice to Hoffman was sufficient to require the government to come forward with an explanation of why Hoffman was seemingly called out of order and, indeed, the government stipulated that it had the burden of proving that three of these other registrants were properly processed. The Selective Service file of one of these registrants disclosed that he was inducted on December 1, the same date Hoffman was originally scheduled for induction. Thus, he obviously was not properly named. The government responds that the remaining four registrants under the then existing regulations were not available for December induction. These registrants, like Hoffman, all had II–S college deferments which ended in 1969. 32 C.F.R. § 1622.-25(a) (1969) provided:

In class II shall be placed any registrant . . . who is satisfactorily pursuing a full time course of instruction at a college, university, or similar institution of learning, such deferment to continue until such registrant

completes the requirement for his baccalaureate degree, fails to pursue satisfactorily a full time course of instruction, or attains the twenty-fourth anniversary of the day of his birth, whichever occurs first.

The other registrants had neither reached age 24 nor completed the requirements for their degree in June 1969. Each was "satisfactorily pursuing a full-time course of instruction" within the meaning of Section 1622.-25(c). Therefore, their deferments under this regulation did not end until September 1969, since each had entered college in September of 1965. The preinduction physical examinations of these four registrants were not scheduled until November 3, 1969. Consequently, they did not receive their notices of acceptability (DD Form 62) until November 17. Since the December call was scheduled for December 1, this notice came too late to satisfy the requirement of 32 C.F.R. § 1631.7 (1969) that notice of acceptability must precede induction by 21 days. Because Hoffman graduated in June 1969, received his physical examination in July of that year, and was given his notice of acceptability on October 1, 1969, he alone of this group was nominally eligible for December 1969 induction.

The ultimate propriety of the Board's action in regard to the other four registrants depends upon regulations then in effect regarding the order for calling registrants to take physical examinations. 32 C.F.R. 1628.11(b) (1969), which has since been repealed, then provided as to registrants classified I–A, I–A–O or I–O:

[T]he local board shall, *so far as is practicable,* select and order to report for Armed Forces physical examination . . . such residents who are non-volunteers in the order of their liability for service.

Section 1628.11(c) (1969) stated:

[T]he local board *may* also mail an order to report for Armed Forces phys-

5. 32 C.F.R. § 1631.7(a) (1969).

ical examination to any resident who is classified in a class other than I–A, I–A–O or I–O if it determines that his induction may occur shortly.

Hoffman argues that the Board should have acted under Section 1628.11(c) to order the other four registrants to report for physicals at least as early as he had to report after their June current information questionnaires revealed that they would lose their II–S deferments in September.[6] Had this been done, it would have made them available for call ahead of Hoffman in December, because they were older registrants.

However, 1628.11(b) clearly leaves discretion in the Board ("as far as is practicable") to choose the time registrants who are classified as available for induction into service will be called for physical examinations. United States v. King, *supra*. Since none of the other four registrants were classified I–A at the time Hoffman asserts that they should have been called for physical examination, the even more permissive "may" language of 1628.11(c) further broadens the Board's scheduling prerogative here. In view of the fact that his Board followed a consistent practice as to Hoffman and all others of scheduling such examinations upon the expiration of student deferments, this court will not fault the Board for not calling the other registrants during the summer when their II–S deferments were still in effect.

This record in nowise discloses any such intentional discrimination or flagrant and serious violation as is required by *Griglio*. *See also* United States v. Strayhorn, *supra*; United States v. Weintraub, 429 F.2d 658 (2d Cir. 1970), cert. denied 400 U.S. 1014, 91 S.Ct. 572, 27 L.Ed.2d 627 (1971). To

the contrary, the Local Board's practice of ordering the physical examinations of registrants after their reclassification appears to be a reasonable means of conserving its limited resources of money, examination space and personnel, since it cannot be determined until a registrant is finally classified as available whether the registrant will ever be liable for the draft.[7]

Finally, Hoffman urges that he is being penalized for graduating from college on time. This branch of the argument is addressed to the wrong forum. Inequities in the impact of the draft laws upon the lives of individual registrants and groups of registrants are legion. Arguments for their correction are properly addressed to Congress, not to this court. Suffice it to say that the order of call defense has not been established here.

### *Conscientious Objector Status*

Hoffman's next argument is that his Local Board violated Selective Service regulations by failing to reopen his classification to consider his August 1970 conscientious objector claim. To be entitled to a reopening for further consideration of classification after an Order to Report for Induction has been mailed, a registrant must show that there has been a change in his status "resulting from circumstances over which the registrant has no control." 32 C.F.R. § 1625.2 (1970.). Ehlert v. United States, 402 U.S. 99, 91 S.Ct. 1319, 28 L.Ed.2d 625 (1971), forecloses any argument that late crystallization of beliefs is such a circumstance. Hoffman urges that the Supreme Court's decision in Welsh v. United States, 398 U.S. 333, 90 S.Ct. 1792, 26 L.Ed.2d 308 (1970), amounted to a change in circumstances

---

6. One of these four registrants received his deferment in the fall of 1968. Since this deferment continued until September 1969, he did not receive a June questionnaire. Hoffman's position as to this registrant is that prior questionnaires showed the deferment would end in 1969 and a physical examination should have been ordered.

7. For instance, a registrant may upon graduation from college be entitled to a further deferment or exemption based upon the nature of his subsequent graduate studies or upon the critical nature of the occupation he chooses to enter.

beyond his control, because that decision first alerted him to the fact that a conscientious objector classification could be based not only upon opposition to war founded on traditional religious beliefs but also upon such opposition springing from beliefs which, while non-religious in an institutional sense, occupy the place of traditional religious beliefs in a registrant's ethos or scheme of values. Hoffman's position is supported by the First Circuit's holding in United States v. Fargnoli, 458 F.2d 1237 (1973), which relied upon changes in Selective Service guidelines. However, this circuit has specifically rejected Hoffman's contention, based upon our analysis that *Welsh* did not constitute a change in the law but merely followed the earlier Supreme Court decision in United States v. Seeger, 380 U.S. 163, 85 S.Ct. 850, 13 L.Ed. 2d 733 (1965). Gee v. United States, 452 F.2d 849 (5th Cir. 1971); United States v. Steiner, 469 F.2d 760 (5th Cir. 1972). *Accord* United States v. Gerin, 464 F.2d 492 (9th Cir. 1972). Therefore, this defense by Hoffman was properly rejected.

### President's Order

■ Hoffman's last argument relies upon an interpretation of the President's announcement of September 19, 1969 canceling the programmed draft calls for November and December of that year.[8] Hoffman argues that the effect of this announcement was to make only those registrants who were eligible for call in October liable for call in October, November and December. Since Hoffman was not eligible for the October call under the Selective Service regulations,[9] and since under his version of the President's cancellation directive he was exempt from call in November and December, the earliest that he could have been called was January 1, 1970 when the lottery or random selection system went into effect. Under this interpretation he would have successfully escaped the draft, since his lottery number has never been reached. The Selective Service System, as indicated by its attempt to induct Hoffman, interprets the President's order differently. They urge that the President's cancellation of the scheduled November and December calls with the accompanying observation that the October call would be "phased out" over the final quarter of the year, merely lowered the overall number of men to be drafted in the final months of 1969 from 79,000 to 29,000 without limiting those to be chosen to the pool of available inductees eligible for the draft in October.

The Selective Service System's interpretation of the President's order is a reasonable one. The language used by the President and Secretary Laird makes it appear that the intent of the order was a reduction in the overall number of men to be called and not an attempt to freeze the manpower pool as

---

8. The President's action is reflected in a report of his news conference of September 19, 1969 as follows:

> Ladies and gentlemen, I have an announcement today and the Secretary of Defense will answer questions on the announcement when it is concluded.
>
> Acting on the recommendation of the Secretary of Defense, the programmed draft calls for the months of November and December—32,000 for November and 18,000 for December—will be canceled.
>
> The draft call previously announced for the month of October will be phased out over the final quarter of the year.

Secretary of Defense Laird then amplified the President's announcement with this explanation:

> As the President has stated, we are canceling the Defense Department's previously programmed draft calls for November and December. The programmed draft call for November was 32,000. It was 18,000 for December. These men will not be called.
>
> This morning I advised the Selective Service System of the President's decision to phase over the next 3 months the 29,000 previously announced inductees in the October draft call.

.        .        .        .        .

9. Hoffman's notice of acceptability was not mailed until October 1 and his appeal was not finally rejected until October 23, 1969.

of October so as to throw those with subsequent eligibility into the lottery system. This interpretation is "buttressed by the fact that the occasion for the announcement was a reduction in troop strength to be maintained in Viet Nam. Then too, to have limited last quarter calls to those registrants available in October to meet the November and December manpower needs could well have forced the local board to violate the "oldest first" priority requirement, if, as might be expected, any older registrants who were not callable in October became eligible in November or December. We also reject Hoffman's final argument.

The judgment of conviction appealed from is

Affirmed.