**UNITED STATES of America, Plaintiff-Appellee,**

v.

**Michael Flynn TAYLOR, Defendant-Appellant.**

**No. 73-2258.**

United States Court of Appeals, Fifth Circuit.

Feb. 27, 1974.

M. C. Mykel, Atlanta, Ga., for defendant-appellant.

John W. Stokes, U. S. Atty., Stanley M. Baum, Asst. U. S. Atty., Atlanta, Ga., for plaintiff-appellee.

Before BELL, DYER and CLARK, Circuit Judges.

CLARK, Circuit Judge:

 In this cause, which was tried to the district court without a jury upon a stipulated written record, Michael Flynn Taylor was convicted of failing to report for and to submit to induction into the Armed Forces of the United States, a duty imposed upon him by the Military Selective Service Act of 1967, 50 U.S.C. App. § 451 et seq., specifically in violation of 50 U.S.C. App. § 462. On appeal he levels a broad-based attack against the judgment of the district court. We pretermit the resolution of all but two procedurally interrelated issues that necessitate reversal.[1] Taylor contends that his Local Board (1) failed to accord him the right to a personal appearance after reopening and reconsidering his classification and (2) prejudiced his Selective Service System appeal rights by advising the Appeal Board ex parte of its view of the facts Taylor had submitted

---

1. Taylor's other contentions include the assertion that he was entitled *ab initio* to a III-A (paternity or extreme hardship) deferment based upon the reasoning of Plotner v. Resor, 446 F.2d 1066 (5th Cir. 1971), appeal dismissed as moot, 463 F.2d 422 (5th Cir. 1972) (en banc), *see also* United States v. Steiner, 469 F.2d 760 (5th Cir. 1972); that the district court's finding that Taylor knowingly rejected the notices of induction which had been mailed to him was based at least in part on the defendant's failure to testify; that the Local Board erred in failing to proffer written reasons for its decision to deny him a III-A deferment, *see, e. g.,* United States v. Windsor, 488 F.2d 1364 (5th Cir. 1973) [No. 72–3426, December 19, 1973]; Eleey v. Volatile, 478 F.2d 333 (3d Cir. 1973) (en banc); Cale v. Volatile, 465 F.2d 1110 (3d Cir. 1972); United States ex rel. Bent v. Laird, 453 F.2d 625 (3d Cir. 1971); United States v. Stetter, 445 F.2d 472 (5th Cir. 1971); and that he is entitled to an order of call defense, *see, e. g.,* United States v. Hoffman, 488 F.2d 923 (5th Cir. 1974); United

States v. Johnson, 476 F.2d 1251 (5th Cir. 1973); United States v. Burnett, 476 F.2d 726 (5th Cir. 1973), because the Board improperly postponed the induction of other registrants, a defense which was considered on the merits and rejected by the district court. Because there is no evidence in the record that Taylor ever reported to the induction center on the date specified in his induction order, it was not proper for that court to reach the substantial question raised in this latter contention. Our circuit is unique in its requirement that such a defense is unavailable to an inductee who refuses to report for induction. *Compare* Schutz v. United States, 422 F.2d 991 (5th Cir. 1970), *with* United States v. Strayhorn, 471 F.2d 661 (2d Cir. 1972); United States v. Dudley, 451 F.2d 1300 (6th Cir. 1971). *See* Weintraub v. United States, 400 U.S. 1014, 91 S.Ct. 572, 27 L.Ed.2d 627 (1971) (Douglas, J., dissenting), denying cert. to 429 F.2d 658 (2d Cir. 1970); United States v. Hoffman, *supra;* United States v. Burnett, *supra.*

in support of his application for a III–A (parent-extreme hardship) deferment.[2]

Taylor registered with Local Board No. 62 in Atlanta, Georgia on October 29, 1963. He continuously maintained a II–S (student) deferment [3] until August 13, 1968, at which time he was reclassified I–A (available for military service).[4] On September 13, 1968 Taylor notified his Local Board by letter that he would like to "appeal" his I–A classification "on the basis of extreme hardship." In addition he advised the Board that he was married, that his wife was expecting a child, and that he intended to become a permanent resident of New York City, where he was then employed and domiciled. He stated that the distance and expense involved would operate to make a personal appearance before the Board in Atlanta "a great burden if not an impossibility." Finally, he requested that his Selective Service records be transferred to a local board in New York City, or if this were not possible, that he be permitted to submit full information in support of his request for reclassification. In reply the Board advised Taylor that he would always be registered with Local Board No. 62, and forwarded to him a standard dependency questionnaire form.

Taylor completed and returned the questionnaire on October 11. It set out that he was then the sole support of his wife and six-day old daughter, that his wife had been ill during her pregnancy and her present condition did not permit her to work, and that his earnings from a clerical job amounted to 130 dollars per week. The Local Board deferred consideration of Taylor's claim for reclassification pending the results of his armed forces physical examination, which was not completed until July,

1969. The examination demonstrated Taylor's physical acceptability for military service. Shortly thereafter, on August 13, 1969, Local Board No. 62 dispatched a letter to Taylor in New York City, which requested that he appear personally before it in Atlanta on August 19 with regard to his hardship claim and that he complete and return a current dependency questionnaire or, if unable to attend, that he notify the Board at once.[5] Taylor failed to appear at the appointed time. The Local Board refused to grant his application for a III–A deferment and renewed his I–A classification. The following day, August 20, 1969, the Board wrote Taylor as follows:

RE: HARDSHIP CLAIM

This is to advise you that the Board Members reviewed your file on August 19, 1969 and denied you a hardship deferment.

Since you have already placed an appeal in your file, the board is forwarding your file on to the Appeal Board this date.

You will be mailed an SSS Form 110, Notice of Classification, when your file is returned to this office advising you of their action.

At this time the Board also forwarded Taylor's file to the state headquarters of the Selective Service System, which in turn transmitted it to the Appeal Board serving the New York City area. Without notifying or advising Taylor of its action, Local Board No. 62 also included the following statement in his file:

TO: APPEAL BOARD
RE: TAYLOR, Michael Flynn

---

2. 32 C.F.R. § 1622.30 (1970).

3. 32 C.F.R. § 1622.25 (1970). The fifth year of Taylor's II-S deferment was granted for the post-baccalaureate study of law, pursuant to 32 C.F.R. § 1622.26(b) (1970).

4. 32 C.F.R. § 1622.10 (1970).

5. This notice, as most others sent to Taylor in New York City, contained a minor error

in his address. His correct apartment number was 6AA, but the address used by the Board specified Apartment AA6. The record does not reflect whether Taylor ever received this notification. He did, however, file a copy of his daughter's birth certificate with the Selective Service Transfer Board in New York City on August 20, 1969.

Registrant is appealing due to hardship in family.

He is married with one child, employed with Housing and Development Administration in New York—makes $130.00 per week.

It is the opinion of the Board Members that registrant's child is now nine months old, and wife could seek employment. They feel that an extreme hardship does not exist in family.

The New York City Appeal Board retained him in Class I–A, and Taylor was subsequently ordered to report for induction on September 10, 1970.

## I.

Under the regulations of the Selective Service System, every registrant must upon timely request be afforded the opportunity to appear personally before his local board *after* it has determined his classification.[6] Similarly, the identical procedural right accrues to the registrant whenever the local board reopens and "considers anew" his classification, even though he is subsequently retained in the same classification to which he was previously assigned.[7] In the past this court has specifically acknowledged

the significance of the registrant's right to appear before the members of his local board, a right that allows him to "discuss his classification, . . . point out the class or classes in which he thinks he should have been placed, . . . direct attention to any information in his file which he believes the local board has overlooked or to which it has not given sufficient weight, and . . . present such further information as he believes will assist the board in determining his proper classification." Magaro v. Cassidy, 426 F.2d 137, 142 (5th Cir. 1970) (citations omitted). *See also* United States v. Bagley, 436 F.2d 55 (5th Cir. 1970). The appearance thus permits the registrant to submit additional, potentially crucial information, either orally or in writing.[8] Under the regulations, however, this right to a personal appearance does not extend to cases in which the local board determines that the registrant has failed to present any facts which establish a prima facie case for reclassification and refuses to reopen.[9]

The court below held that the Local Board's action in failing to accord Taylor the right to appear personally before them was proper because, in its judgment, the Board's decision not to re-

6. (a) Every registrant after his classification is determined by the local board, except a classification which is determined upon an appearance before the local board under the provisions of this part, shall have an opportunity to appear in person before the member or members of the local board designated for the purpose if he files a written request therefor within 30 days after the local board has mailed a Notice of Classification (SSS Form 110) to him. Such 30-day period may not be extended. 32 C.F.R. § 1624.1(a) (1970).

7. 32 C.F.R. §§ 1625.11, 1625.13 (1970).

8. 32 C.F.R. § 1624.2(b) (1970).

9. When a registrant, any person who claims to be a dependent of a registrant, any person who has on file a written request for the current deferment of the registrant in a case involving occupational deferment, or

the government appeal agent files with the local board a written request to reopen and consider anew the registrant's classification and the local board is of the opinion that the information accompanying such request fails to present any facts in addition to those considered when the registrant was classified or, even if new facts are presented, the local board is of the opinion that such facts, if true, would not justify a change in such registrant's classification, it shall not reopen the registrant's classification. In such a case, the local board, by letter, shall advise the person filing the request that the information submitted does not warrant the reopening of the registrant's classification and shall place a copy of the letter in the registrant's file. No other record of the receipt of such a request and the action taken thereon is required. 32 C.F.R. § 1625.4 (1970). *See* note 7, *supra.*

classify Taylor at the August 19 meeting amounted to a refusal to reopen and consider his classification anew.[10] We must disagree with this conclusion. If Local Board No. 62 had determined that the new facts submitted in Taylor's dependency questionnaire, which declared that the registrant was the sole support for his wife and infant daughter and that his wife was yet ill, failed to sustain even a prima facie showing of extreme hardship, its ex parte tender to the Appeal Board of written reasons for its August 19 action would certainly have been, in its view, entirely unnecessary. In any event, if the operative decision had been a refusal to reopen, the Board presumably would have followed its governing Selective Service Regulations, which expressly required it to advise Taylor "that the information submitted does not warrant the reopening of the registrant's classification."[11] Instead, Taylor was advised that his hardship deferment claim had been denied.

Where a registrant makes non-frivolous allegations of facts that have not been previously considered by his board, and that, if true, would be sufficient under regulation or statute to warrant granting the requested reclassification, the board must reopen the registrant's classification unless the truth of these new allegations is conclusively refuted by other reliable information in the registrant's file. See United States v. Burlich, D.C., 257 F. Supp. 906, 911. For in the absence of such refutation there can be no basis for the board's refusal to reopen except an evaluative determination adverse to the registrant's claim on the merits. And it is just this sort of determination that cannot be made without affording the registrant a chance to be heard and an opportunity for an administrative appeal.

Mulloy v. United States, 398 U.S. 410, 417, 90 S.Ct. 1766, 1771, 26 L.Ed.2d 362 (1970). In determining that Taylor's new classification was not, as claimed by the government, the result of a refusal to reopen, the regulations themselves clearly preclude us from attaching any significance to the fact that he was again placed in Class I–A.[12] Indeed, the Board's instruction to Taylor that a notice of classification on SSS Form No. 110 would be sent to him after the Appeal Board had rendered its decision is inconsistent with a refusal to reopen, but is completely compatible with the provisions of the regulations that govern a reopening and consideration anew of a registrant's classification.[13]

The Local Board effectively foreclosed Taylor's right to request a personal appearance after he had been reclassified when it summarily forwarded his file to the Appeal Board. The Board's preclassification offer to Taylor of a personal appearance at its August 19 meeting cannot displace Taylor's right under the regulations to discuss his classification and present additional information *after* the Board had reopened his case and rejected his application for a III–A deferment.

The Supreme Court has aptly summarized the controlling rule: "whether or not a reopening is granted is a matter of substance, for with a reopening comes a right to be heard personally and to appeal"; therefore "[t]he [local] board could not deprive the petitioner of the procedural protections attending reopening by making an evaluative determination of his claim while purportedly declining to reopen his classification." Mulloy v. United States, *supra*, 398 U.S. at 416, 418–419, 90 S.Ct. at 1770, 1772.

II.

The Board did not advise Taylor that the October 1968 information,

---

10. The district court concluded that Taylor had failed to establish a "prima facie case of extreme hardship to family."

11. 32 C.F.R. § 1625.4 (1970); *see* note 9, *supra.*

12. *See* 32 C.F.R. § 1625.11, *supra*, note 7.

13. *See* 32 C.F.R. §§ 1625.11, .12 (1970).

which he had furnished in the dependency questionnaire, had been supplemented with the Board's own unsupported supposition that his wife was now recovered from the disabling illness he had there described. There is no need for this court to consider whether the Board erred in failing to communicate this information to Taylor in the way of a statement of written reasons for its classification action.[14] Neither do, or must, we decide whether he submitted to the Board sufficient facts to establish prima facie his entitlement to a III–A deferment. *See* Mulloy v. United States, *supra*; United States v. Steiner, *supra*. However, the Board's action in transmitting its supposition to the Appeal Board without advising Taylor that it had done so, clearly compounded its previous deprivation of his right to a personal appearance, by secretly freighting his appeal with adverse information. By even the most minimal standard of fairness, he was entitled to know the content of the record being transmitted in connection with his appeal.[15]

Thus, Taylor was not only deprived of an opportunity for a personal appearance before the Local Board at which he could possibly have rebutted this supposition and supplied any other information relevant to his proper classification on the local level, but he was also denied knowledge that this additional factor which so vitally affected his appeal had been supplied to the Board that would review the unfavorable action.

This combination of procedural deficits rendered the order to report for induction invalid. Therefore the present conviction cannot be maintained. The judgment of conviction appealed from is

Reversed.

---

14. *See* note 1, *supra*; *cf.* United States v. Windsor, *supra*; United States v. Stetter, *supra*.

15. *See* McGarva v. United States, 406 U.S. 953, 92 S.Ct. 2067, 32 L.Ed.2d 341 (1972), on remand, 464 F.2d 1388 (5th Cir. 1972).