## G.C. Murphy Co. v. M. Goldfarb-My Florist Inc.

*James H. Webster*, for plaintiff.
*Thomas R. Johnson*, for defendants.

WETTICK, *J.*, April 10, 1991—The subject of this opinion and order of court is defendants' motion for the award of counsel fees against plaintiff's counsel pursuant to 42 Pa.C.S. §2503(6), (7), and (9).[1] Defendants may seek counsel fees and costs against a party's counsel because counsel is included within the definitions of "participant" and "party." 42 Pa.C.S. §102.

Plaintiff (landlord) instituted this declaratory judgment action to reform or modify its lease with defendants (tenants). The leased premises are a garden supply store located in a shopping center. The lease was entered into in 1965. Assuming that the tenant exercises its option to renew, the lease will not expire until 2027.

The lease provides for a minimum annual rent of $30,000. The lease also provides for the tenant to pay as additional rent 5 percent of its gross sales in excess of $600,000 and 4 percent of its gross sales in excess of $1 million. The lease further provides that the landlord, at its own expense, will repair, maintain, and paint the tenant's premises throughout the term of the lease. It also requires the landlord throughout the term of the lease to pay for all of the tenant's utility services and to maintain fire, extended coverage, and plate glass insurance for the tenant's premises.

The landlord sought to modify or reform this lease because the financial burdens that it imposes on the

---

1. Defendants have not raised a claim against plaintiff G.C. Murphy Company, probably because it has filed for bankruptcy.

landlord are drastically different from those imposed when the lease was executed. Since 1974, the tenant's sales have remained static. Consequently, the tenant's rental payments have not increased. However, the landlord's expenses for maintaining the tenant's premises, providing utility services to the premises, and providing insurance have dramatically increased. At the present time, the landlord's payments for the tenant's maintenance, utility, and insurance expenses exceed the rent that it receives. Consequently, the landlord would be in a better position if it could simply permit the tenant to occupy its premises at no rent for the next 36 years (even with the landlord paying all real estate taxes, debt service, and common area expenses associated with the tenant's premises) provided that the tenant paid its maintenance, utility, and insurance expenses. Furthermore, the evidence that the landlord would present supports a finding that the difference between the rent that the landlord receives from the tenant and the expenses incurred solely in connection with the tenant's premises will significantly increase during the remainder of the lease.

Plaintiff was not the owner of the shopping center at the time the parties entered into the lease. The owner was represented by Mr. David Stevenson. Mr. Stevenson testified that he did not anticipate that the maintenance, utility, and insurance expenses for the tenant's premises would ever exceed the rentals that it received from the tenant. At the time the parties entered into the lease, the lease produced rentals that substantially exceeded these expenses. He assumed that the increased expenses that were anticipated in the future would be more than covered by increased rent from the increased sales that were also anticipated.

The tenant was represented by Mr. Hyman Messing during the negotiations. He testified that the tenant anticipated more sales than have occurred. According to his testimony, the tenant would have not entered the Pittsburgh market if it did not anticipate sales substantially in excess of the break-even point.

At the same time, both the landlord and the tenant knew that rental increases were tied only to increased sales and that the lease did not contain an escape clause that would allow the landlord, to terminate or modify the lease if future sales did not meet the parties' anticipations. This meant that the lease substantially shifted the risk that the tenant's sales would not meet anticipated levels from the tenant to the landlord.

The landlord based its lawsuit on case law permitting contracts to be terminated or reformed under an impracticability standard that many courts have utilized in recent years in place of the more restrictive doctrine of impossibility of performance. The landlord cited several cases in which courts gave serious consideration to claims to modify or reform a contract because of future events that drastically altered the burdens that the contract placed upon the parties. See, e.g., *Freidco of Wilmington, Delaware, Ltd. v. The Farmers Bank,* 529 F. Supp. 822 (D. 1981); *Atlas Corp. v. United States,* 895 F.2d 745 (Fed. Cir. 1990); *Florida Power & Light Co. v. Westinghouse Electric Corp.,* 826 F.2d 239 (4th Cir. 1987); *National Presto Industries Inc. v. United States,* 338 F.2d 99 (Ct. Cl. 1964); *Madreperla v. The Williard Co.,* 606 F. Supp. 874, 878-79 (E.D. Pa. 1985); *Haas v. Pittsburgh National Bank,* 495 F. Supp. 815 (W.D. Pa. 1980); *Aluminum Company of America v. Essex Group Inc.,* 499 F. Supp. 53 (W.D.

Pa. 1980); and *E.C. Ernst Inc. v. Koppers Co. Inc.,* 476 F. Supp. 729 (W.D. Pa. 1979), *modified on other grounds,* 476 F.2d 729 (3d Cir. 1980).

The case of *Freidco of Wilmington, Delaware v. Farmers Bank, supra,* involved a claim similar to the present claim. In 1967, the parties entered into a 35-year lease. The lease required the tenant to pay a proportional share of the actual costs for water, electricity, heating, and air conditioning provided that the annual cost to the tenant would not exceed $1.10 per square foot of occupied space. At the time the parties entered into the lease, the estimated utility cost was $.52 per square foot. At the time this lawsuit was initiated, the cost was $1.43 per square foot. Consequently, the landlord was paying $.33 per square foot of the tenant's utility costs. These payments were approximately 7 percent of the total rental payments that the landlord received from the tenant.

The landlord sought to reform the lease on the ground that drastic increases in utility costs were not anticipated at the time the parties entered into the lease. The court held that "[i]n recent years, courts have abandoned the restrictive doctrine of 'impossibility of performance' for the more flexible 'impracticability' standard." *Id.* at 824. Discharge of an obligation by reason of impracticability requires proof of three elements.

First, the party claiming the discharge must establish the occurrence of an event, the non-occurrence of which was a basic assumption of the contract. However, the event "need not be unexpected, unforeseeable, or even unforeseen. The non-occurrence of that event, however, must have been a fundamental assumption on which both parties made the contract." *Id.* at 825. (citations omitted)

Second, the party claiming the discharge must show that continued performance is not commercially practicable. The critical question is whether "the cost of performance has in fact become so excessive and unreasonable that failure to excuse performance would result in grave injustice." *Id.* at 825, quoting *Gulf Oil Co. v. FPC,* 563 F.2d 588, 599-600 (3d Cir. 1977). `

Third, the party claiming the discharge must show that it did not expressly or impliedly agree to perform in spite of an impracticability that otherwise would justify non-performance. The court said that "the focus cannot be on the unqualified nature of the language of the contract. Rather, the inquiry is whether the parties, by virtue of their implicit assumptions, have contracted in a universe more limited than the literal undertaking, or whether they intended to allocate a duty without regard to the possibility of change, foreseeable or otherwise." *Id.* at 826.

The court recognized that the dispute involved a fixed-price contract which by its nature assigned the risk of increased costs to the seller. In this situation, a court shall enforce the assignment "in the context of increased costs within the normal range. The existence of such a risk assignment does not preclude a discharge by supervening impracticability, however, where a disaster results in an abrupt tenfold increase in the cost to the seller." *Id.* at 826. If the increased burden "was a wholly unforeseeable one at the inception of the term or was so remote as to be of minimal importance, this would suggest that non-occurrence of such a burden was a 'basic assumption' within the meaning of the Restatement." *Id.*

The court held that since the parties had recognized the possibility of utility costs in excess of

$1.10 per square foot during the term of the lease, a utility cost of $1.43 was a basic assumption of the lease. The court, however, said that "there is undoubtedly a level of utility cost beyond the universe in which these parties contracted." *Id.* at 829.

In the present case, the Honorable Ralph H. Smith Jr. of this court entered an order of court on December 6, 1989, granting defendants' motion for summary judgment. Plaintiff filed an appeal to the Pennsylvania Superior Court from this court order. Plaintiff withdrew the appeal shortly before the date of the argument.

Following the withdrawal of the appeal, defendants filed their motion for the award of counsel fees against plaintiff's counsel pursuant to 42 Pa.C.S. §2503(6), (7), and (9).[2] Defendants base their motion primarily on their claim that plaintiff's counsel filed a lawsuit that had no factual or legal substance. Defendants contend that if counsel had made any reasonable inquiry, counsel would have discovered that there was no factual basis to support any legal argument based on existing law or good-faith arguments for the extension, modification, or reversal of existing law. Consequently, plaintiff's counsel either filed a lawsuit at plaintiff's request with the knowledge that it was without legal substance or in total disregard of counsel's obligation to determine whether the lawsuit might have merit before carrying out a client's instructions to initiate litigation. This behavior constitutes conduct that is obdurate, vexatious, and in bad faith because the filing of a lawsuit that lacks any legal foundation serves only

---

2. Defendants' motion for the award of counsel fees and costs is being considered by this member of the court because Judge Smith advised the parties to present this motion to me in my capacity as miscellaneous calendar control judge.

to harass and inconvenience the parties who must defend the lawsuit.

Alternatively, defendants contend that they are entitled to counsel fees from the time that it must have been apparent to plaintiff's counsel as a result of information gained through discovery that the suit had no legal foundation. Defendants contend that at the very minimum, they are entitled to counsel fees incurred in responding to the appeal from the order of this court granting summary judgment which plaintiff withdrew shortly before the date of the Superior Court argument.

Counsel fees may not be awarded pursuant to section 2503(6), (7), and (9) unless defendants establish that the conduct of plaintiff's counsel in commencing or pursuing this lawsuit was dilatory, obdurate, vexatious, arbitrary, or in bad faith. The Superior Court has held that counsel fees may not be awarded to the prevailing party simply because a plaintiff cannot produce sufficient evidence to defeat a motion for summary judgment. *Santilo v. Robinson,* 383 Pa. Super. 604, 557 A.2d 416 (1989). In reaching this result, the court referred to the standards governing the wrongful use of civil proceedings (42 Pa.C.S. §8351 et seq.) in determining whether the conduct comes within the coverage of 42 Pa.C.S. §2503:

"Although plaintiffs' claim against appellant may not have been a strong one and while they may have not been able to prove their case of negligence, the record does not indicate that plaintiffs did not reasonably believe that their claim was valid under existing or developing law. 42 Pa.C.S. §8352(1). . . . Actions are not brought only where there is certain proof of liability and damages. Punishing all those who initiate actions which are not ultimately successful by granting the defendant's request for coun-

sel fees would have a chilling effect on right to bring a suit for negligence. This was not the intent of the rule permitting recovery of counsel fees upon a showing of arbitrary, vexatious or bad faith conduct."

The recent opinion of this member of the court in *Kranack v. Domino's Pizza Inc.,* no. GD87-16335 (March 4, 1991), a copy of which is attached, reviewed the Pennsylvania appellate court case law covering the award of counsel fees pursuant to section 2503(7) and (9). [Cited opinion not reproduced in this publication.] This opinion discussed the need for a standard that did not discourage parties from pursuing legitimate claims and defenses through zealous advocacy because of the fear that they may be penalized for aggressively promoting their clients' interests through an award of counsel fees. In this opinion, we said that the Rules of Professional Conduct are relevant because we would create a chilling effect on the ability of counsel to protect the interests of a client if conduct which the rules permit could serve as the basis for the award of counsel fees pursuant to section 2503 (7) and (9).

We, therefore, refer to both 42 Pa.C.S. §8351 et seq. and the Rules of Professional Conduct in construing section 2503. Section 8352 does not allow recovery against a lawyer who reasonably believes in the existence of the facts upon which the claim is based and reasonably believes that under those facts the claim may be valid under existing or developing law. The same standards are imposed by Rule 3.1 of the Rules of Professional Conduct which provides that a lawyer shall not bring a proceeding unless "there is a basis for doing so that is not frivolous, which includes a good-faith argument for an extension, modification or reversal of existing law."

Also, the comment to Rule 3.1 provides that an action is not frivolous "even though the lawyer believes that the client's position ultimately will not prevail. The action is frivolous . . . if the lawyer is unable either to make a good-faith argument on the merits of the action taken or to support the action taken by a good-faith argument for an extension, modification or reversal of existing law."

There is substantial federal law addressing the issue of when counsel fees may be imposed under Federal Rule 11 where claims have been dismissed for legal insufficiency. See, generally, C. Wright & A. Miller, 5A *Federal Practice and Procedure* §1335 (1990). This rule requires counsel to certify that he or she has concluded after reasonable inquiry that any legal paper which counsel signs is well-grounded in fact and is warranted by existing law or a good-faith argument for extension, modification, or reversal of existing law and permits the award of counsel fees for a legal paper signed in violation of this rule. Under Pa.R.C.P. 1023, an attorney's signature to a pleading certifies only that to the best of counsel's knowledge, information, and belief there is good ground to support the pleading and it is not interposed for delay. Since the requirements that Pennsylvania Rule 1023 expressly imposes on counsel are less than those imposed under Federal Rule 11 where a claim for counsel fees is based solely on the legal insufficiency of a claim or defense, we find to be persuasive those opinions construing Federal Rule 11 that utilize stringent standards in order that parties are not discouraged from attempting to expand developing areas of the law. In *Operating Engineers Pension Trust v. A-C Co.,* 859 F.2d 1336 (9th Cir. 1988), the Court of Appeals for the Ninth Circuit utilized the following standard:

"Rule 11 must not be construed so as to conflict with the primary duty of an attorney to represent his or her client zealously. Forceful representation often requires that an attorney attempt to read a case or an agreement in an innovative though sensible way. Our law is constantly evolving, and effective representation sometimes compels attorneys to take the lead in that evolution. Rule 11 must not be turned into a bar to legal progress. *See, e.g., Hudson v. Moore Business Forms Inc.,* 827 F.2d 450, 453-55 (9th Cir. 1987) ('attempt to seek tort damages under a *Seaman's*-type action is not frivolous, but rather an attempt to expand a developing area of the law'). . . . The simple fact that an attorney's legal theory failed to persuade the District Court 'does not demonstrate that [counsel] lacked the requisite good faith in attempting to advance the law.' Rather, we reserve sanctions for the rare and exceptional case where the action is clearly frivolous, legally unreasonable or without legal foundation, or brought for an improper purpose." *Id.* at 1344. (citations omitted)

In *Doering v. Union County Board of Chosen Freeholders,* 857 F.2d 191 (3d Cir. 1988), the Court of Appeals for the Third Circuit utilized a similar standard:

"The standard developed by courts for imposition of sanctions under Rule 11 is stringent because such sanctions (1) are 'in derogation of the general American policy of encouraging resort to the courts for peaceful resolution of disputes'; (2) tend to 'spawn satellite litigation counterproductive to efficient disposition of cases'; and (3) 'increase tensions among the litigating bar and between [the] bench and [the] bar.' This court and others have interpreted its language to prescribe sanctions, including fees, only in the 'exceptional circumstance' where a claim or

motion is patently unmeritorious or frivolous. ('Rule 11 therefore is intended to discourage pleadings that are "frivolous, legally unreasonable, or without factual foundation, even though the paper was not filed in subjective bad faith."') ('[R]ule 11 is violated only when it is "patently clear that a claim has absolutely no chance of success."')" *Id.* at 194. (citations omitted)

Under the standards set forth in the applicable Rules of Professional Conduct, the standards governing the wrongful use of civil proceedings and the more stringent standards for the award of counsel fee claims under Rule 11, we conclude that in this case there is no basis for awarding counsel fees pursuant to 42 Pa.C.S. §2503(6), (7), or (9). Plaintiff's claim in this case was clearly substantial—it was not patently frivolous or without any chance of success.

The first issue raised by plaintiff's lawsuit is whether there is some point at which the courts will intervene because the burdens which the contract imposes on a party have drastically increased as a result of events that were not anticipated. As we have discussed, there is a body of case law supporting plaintiff's position that judicial intervention may occur when substantial burdens arise from events outside the implicit assumptions on which both parties made the contract.

The second issue is whether the facts of this case permit plaintiff to rely on this case law. We believe that the transaction is at the point at which plaintiff can argue in good faith that its fact situation brings it within the scope of this case law. At this time the tenant is not contributing to the landlord's expenses for real estate taxes, debt service and common maintenance. It is also looking to the landlord to make payments for the tenant's maintenance ex-

penses, utilities, and insurance that exceed the rent which the tenant pays.

In *Freidco of Wilmington, Delaware v. Farmers Bank, supra,* a federal district court gave very serious consideration to an impracticability claim of a landlord who was required to make annual utility payments of $23,544 for the premises of a tenant whose annual rent payments exceeded $344,000. Since the court stated that it would have set aside the utility cap at some point, it is very possible that the court would have reached a different result in the facts of the present case in which none of the tenant's rent is available for any purpose other than payment of the tenant's maintenance, utility, and insurance expenses.

We find no merit to defendants' position that counsel fees should be awarded because plaintiff's counsel did not investigate the facts surrounding the negotiation of the lease. Even assuming that Pennsylvania law imposes such an obligation on counsel, plaintiff's legal arguments are not based on whether the parties agreed at the time they entered into the lease that at some point the terms of the lease could become so onerous that the lease should be rescinded. Obviously, the parties did not do so or this provision would have been included in the lease. The case law that plaintiff relies upon provides for the court to set aside obligations imposed through unqualified language within a contract. Under plaintiff's legal argument, it is the courts rather than the parties that determine when a situation is beyond the contemplation of the parties.

The testimony concerning the initial negotiation is exactly what would have been anticipated. While the landlord knew that it was assuming the risk of the tenant's unprofitability, it never expected that rental payments would remain static. The tenant, on

the other hand, testified that if its sales did not come close to meeting the tenant's expectations, the lease provided that this would be the landlord's problem rather than the tenant's.

The critical facts for purposes of the landlord's legal argument are that the lease now imposes burdens upon the landlord that the parties did not anticipate because the tenant's sales are substantially less than either party anticipated. Since the landlord has established these facts, the alleged failure to investigate the facts is not an issue.

Finally, the filing of the appeal was not frivolous. For the reasons previously discussed, we believe that plaintiff's counsel could have reasonably believed that the lower court ruling would be overturned. The withdrawal of the appeal cannot serve as a basis for the award of counsel fees because we do not know whether the decision was made by counsel or the client or the reasons for the decision.

In this opinion, I am not questioning the ruling of Judge Smith. I would have reached the same result. However, the granting of a motion for summary judgment does not mean that the claim which the court rejected is frivolous. I would have reached the same result only because the burdens that the lease is now imposing on the tenant are not yet, in my opinion, "beyond the universe in which these parties contracted." *Freidco,* 529 F. Supp. at 829. But I would have characterized my decision as a "close call."

## ORDER

On this April 10, 1991, it is hereby ordered that defendants' motion for award of attorney's fees and costs is denied.